**7**

Peter Cianchetta, SBN: 220971
CIANCHETTA & ASSOCIATES
8788 Elk Grove Blvd., Suite 2A
Elk Grove, California 95624
Ph: (916) 685-7878
plc@eglaw.net

Attorney for Debora Leigh Miller-Zuranich

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| In re: | Case No. 2019-21640 |
|---|---|
| Debora Leigh Miller-Zuranich | DCN: PLC-07 |
| , Debtors | Hearing Date: October 8, 2019<br>Hearing Time: 2:00 PM<br>Hon. Christopher D. Jaime<br>Courtroom 32 - Dept B |

**EXHIBITS IN SUPPORT OF MOTION TO EMPLOY REAL ESTATE BROKER**

**EXHIBIT A –** Broker License, Agent License

**EXHIBIT B –** Listing Agreement

# State of California

**Department of Real Estate**

## Real Estate Salesperson License

Stanley Edward Cornelius

**BROKER AFFILIATION**
CHARLES CLAIBORNE KELLUM
2329 CENTRAL AVENUE
ALAMEDA, CA 94501

*Expires:* **May 18, 2020**

*Issued:* **December 12, 2018**

*Identification Number:* **01128054**





# RESIDENTIAL LISTING AGREEMENT
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/18)

**Date Prepared:** *08/28/2019*

1. **EXCLUSIVE RIGHT TO SELL:** **Debora Miller Zuranich** ("Seller") hereby employs and grants **Charles Kellum, Broker** ("Broker") beginning (date) **August 28, 2019** and ending at 11:59 P.M. on (date) **November 28, 2019** ("Listing Period") the exclusive and irrevocable right to sell or exchange the real property described as **30 Merlin Ct.**, situated in **Oakland** (City), **Alameda** (County), California, **94605-5624** (Zip Code), Assessor's Parcel No. _____ ("Property").
   - ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   - ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be: **Eight Hundred Forty-Nine Thousand, Nine Hundred Ninety-Nine** Dollars ($ **849,999.00** ).
   **B.** Listing Terms: _____.

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**

   **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ **5.000** percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, AND _____, as follows:
   - **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   - **OR (2)** If within **60** calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   - **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   **C.** In addition, Seller agrees to pay Broker: _____.
   **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   - **(1)** Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ **2.500** percent of the purchase price, or ☐ $ _____.
   - **(2)** Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   **F. (1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
   - **(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____.
   - **(3)** If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2018, California Association of REALTORS®, Inc.
**RLA REVISED 12/18 (PAGE 1 OF 5)**

Seller's Initials ( _____ ) ( _____ )



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Property Address: **30 Merlin Ct. , Oakland, CA  94605-5624**    Date: **08/28/2019**

4. **A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   **ADDITIONAL ITEMS EXCLUDED:** _____ .
   **ADDITIONAL ITEMS INCLUDED:** _____ .
   Seller intends that the above items be excluded or included in offering the Property for sale, but understands that**:** (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

   **B. (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
   ☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
   ☐ Other _____
   **(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
   ☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
   ☐ Other _____
   Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5. **MULTIPLE LISTING SERVICE:**
   **A.** Broker is a participant/subscriber to _____**Oakland/Berkeley**_____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

---

Seller's Initials ( _____ )( _____ )    Broker's/Agent's Initials ( _DS_ )( _____ )

Seller's Initials   ( _____ ) ( _____ )

**RLA REVISED 12/18 (PAGE 2 OF 5)**
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

Property Address: *30 Merlin Ct. , Oakland, CA  94605-5624* _____　　Date: *08/28/2019*

B. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) **Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) **Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) **Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**
    A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
    B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.
    C. Investigations and Reports: Seller agrees, within 5 (or ___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control  ☐ General Property Inspection  ☐ Homeowners Association Documents  ☐ Other _____.
    D. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**
    A. **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
    B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
    C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Seller's Initials　(_____)　(_____)

**RLA REVISED 12/18 (PAGE 3 OF 5)**

DocuSign Envelope ID: 22DEA425-79BA-41E4-88BF-440A4A3ED276
Filed 09/12/19  Case 19-21640  Doc 113

Property Address: **30 Merlin Ct. , Oakland, CA  94605-5624** Date: **08/28/2019**

**D. Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**E. Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**10. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property.  Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**
  **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or [ ] if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.
  **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) [ ] Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked [ ] does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked [ ] does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** [ ] REO Advisory Listing (C.A.R. Form REOL) [ ] Short Sale Information and Advisory (C.A.R. Form SSIA)
[ ] Trust Advisory (C.A.R. Form TA)
[ ] Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction
_____
_____
_____

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**
  **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

Seller's Initials (_____) (_____)

**RLA REVISED 12/18 (PAGE 4 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Property Address: *30 Merlin Ct. , Oakland, CA  94605-5624*      Date: *08/28/2019*

- B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.
- C. **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____ *Debora Miller Zuranich* Date _____
*Debora Miller Zuranich*
Address *9369 Newinton Way*    City *Elk Grove*    State *CA*    Zip *95758-4440*
Telephone *(916)952-0116*    Fax _____ E-mail *debizuranich@yahoo.com*

Seller _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) **Charles Kellum, Broker**    DRE Lic. # *00987965*
Address *2329 Central Ave*    City *Alameda*    State *CA*    Zip *94501*
By _[signature]_____ Tel. *(510)926-9440* E-mail *stanleycornelius@aol.com* DRE Lic.# *01128054* Date *8/28/2019*
By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 12/18 (PAGE 5 OF 5)**
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**