2

Stuart B. Wolfe (SBN 156471)
*sbwolfe@wolfewyman.com*
Jonathan C. Cahill (SBN 287260)
*jccahill@wolfewyman.com*
WOLFE & WYMAN LLP
980 9th Street, Suite 1750
Sacramento, California 95814
Telephone: (916) 912-4700
Facsimile: (916) 329-8905

Attorneys for
OCRE Investment Fund 1 LLC

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>DEBORA LEIGH MILLER-ZURANICH<br><br>    Debtor and Debtor-in-Possession, | Case No.: 19-21640-B-11<br>Chapter 11<br>Hon. Christopher D. Jaime<br><br>Docket Control No.: WW-2<br><br>**REQUEST FOR JUDICIAL NOTICE**<br><br>**Hearing Date: October 8, 2019**<br>**Time: 2:00 p.m.**<br>**Ctrm: 7, 7th Floor** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that OCRE INVESTMENT FUND 1 LLC hereby requests that the Court take judicial notice of the following documents pursuant to pursuant to Rule 201(b) and Rule 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure:

- **Exhibit 1**: Deed of Trust encumbering real property located at 30 Merlin Court, Oakland, CA 94605 (the "Property"), recorded in the Official Records of Alameda County, California on August 31, 2018, as Document #2018170990.

- **Exhibit 2**: PACER docket for case number 17-31036-HLB filed by Debtor in the

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

3459903.1

1    Northern District of California- San Francisco Division on October 16, 2017.

2        • **Exhibit 3**: PACER docket for case number 18-31023-HLB filed by Debtor in the

3    Northern District of California- San Francisco Division on September 18, 2018.

4        • **Exhibit 4**: PACER docket for case number 18-31252-HLB filed by Debtor in the

5    Northern District of California- San Francisco Division on November 20, 2018.

6        • **Exhibit 5**: PACER docket for case number 19-30034-HLB filed by Debtor in the

7    Northern District of California- San Francisco Division on January 11, 2019.

8        Pursuant to Federal Rule of Evidence 201, the court may take judicial notice of adjudicative

9    facts, which are "either (1) generally known within the territorial jurisdiction of the trial court or (2)

10   capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

11   be questioned." Fed. R. Evid. 201(b). Notably, the Court may "take judicial notice of facts that are a

12   matter of public record." *Hefner v. Chao*, 2009 WL 2485754, *1 (S.D. Cal. 2009); *Lee v. City of Los*

13   *Angeles*, 250 F. 3d 668, 689 (9th Cir. 2001); *Mack v. South Bay Beer Distrib.*, 798 F. 2d 1279, 1282

14   (9th Cir. 1986) (overruled in part on other grounds by *Astoria Federal Sav. and Loan Ass'n v.*

15   *Solimino*, 501 U.S. 104 (1991)).

16       The Court may take judicial notice of the documents referenced herein because they are

17   matters of public record.

18   DATED: September 30, 2019            WOLFE & WYMAN LLP

19

20                                       By: _____*/s/ Jonathan C. Cahill*_____

21                                           STUART B. WOLFE
                                             JONATHAN C. CAHILL
22                                           **ATTORNEYS FOR OCRE FINANCIAL**
                                             **INVESTMENT 1 LLC**
23

24

25

26

27

28

2

3459903.1

**WOLFE & WYMAN LLP**
ATTORNEYS & COUNSELORS AT LAW

# EXHIBIT "1"

## DEED OF TRUST



2018170990    08/31/2018 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:    171.00

17   PGS



**RECORDING REQUESTED BY**
CHICAGO TITLE COMPANY
**AND WHEN RECORDED MAIL DOCUMENT TO:**

**NAME**    OCRE INVESTMENT FUND LLC

**STREET ADDRESS**    4667 Macarthur Blvd #230

**CITY, STATE & ZIP CODE**   Newport Beach, CA 92660



SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust   *And Assignment of Rents*

**Title of Document**

**DOCUMENTARY TRANSFER TAX $** _____

  ☐   COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR

  ☐   COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES REMAINING AT TIME OF SALE

  ☐   EXEMPT FROM DOCUMENTARY TRANSFER TAX PURSUANT TO:

**X** _____

Signature of declarant or agent determining tax

**Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).**

☐ **Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax**

☐ **Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).**

☐ **Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.**

☐ **Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.** *cap reached after 1st title*

☐ **Exempt from the fee per GC 27388.1 (a) (1); not related to real property.**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**Filed 09/30/19**
Filed 05/14/19

**Case 19-21640**
Case 19-21640

**Doc 121**
Claim 2-1

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

OCRE INVESTMENT FUND 1 LLC
4667 MACARTHUR BLVD #230
NEWPORT BEACH, CA, 92660
Loan Number: ▮▮▮▮▮▮▮

SPACE ABOVE THIS LINE FOR RECORDERS USE

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 28, 2018,** together with all Riders to this document.

**(B) "Borrower"** is **DEBORA MILLER-ZURANICH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,** Borrower is the trustor under this Security Instrument. Borrower's mailing address is: **9369 NEWINGTON WAY, ELK GROVE, CA 95758**

**(C) "Lender"** is **OCRE INVESTMENT FUND 1 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY.** Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **CHICAGO TITLE COMPANY.**

**(E) "Note"** means the promissory note signed by Borrower and dated **August 28, 2018.** The Note states that Borrower owes Lender **Six hundred Seventeen thousand Five hundred dollars** Dollars (U.S. **$617,500.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **09/01/2020.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower: Assignment of Rents and Profits; Security Agreement and Protection of Lenders' Security Rider and Rider to Deed of Trust.

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** mean those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (1) damage to, or destruction of, the Property, (11) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(0) "Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County Recorder's Office of **ALAMEDA** County, which currently has the address of **30 MERLIN COURT, OAKLAND, CA  94605** and fully described as:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"**

APN #048-6298-064-00

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer.   Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are

Page 2 of 15

accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (1) interest due under the Note; (2) principal due under the Note; (3) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower to provide and deliver evidence of insurance to lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.
Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Filed 09/30/19
Filed 05/14/19
Case 19-21640
Case 19-21640
Doc 121
Claim 2-1

**9. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or

proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of

the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right to acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must

elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine * but subject to any statutory right of Borrower to direct the order in which sold , property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchase its deed conveying the property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness there. Any person including Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or implied under California Civil Code Section 2924g(b). All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged

Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22. The Agreement is Binding.** This Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatee, devises, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tank, plumbing, machinery, air conditioners, ducts, and the like.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26. Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, this deed of trust is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest.

**27. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provide by Section 2943 of the Civil Code of California.

**28. Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit information to Lender within 20 days of date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29. Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

Filed 09/30/19
Filed 05/14/19

Case 19-21640
Case 19-21640

Doc 121
Claim 2-1

**30. Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**31. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_DEBORA MILLER-ZURANICH / Borrower /Date_                8/29/18

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

State of California

County of _Sacramento_

On _8/29/18_ before me, _J Phan, Notary Public_
    Date                     Here insert Name and Title of the Officer

Personally appeared _Debora miller - Zuranich_
                                     Name(s) of signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) IS/ARE subscribed to the within instrument, and acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR authorized capacity(ies), and that by HIS/HER/THEIR signature(s) on the instrument the person or entity upon behalf of which the person(s) acted, executed the instrument.

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

WITNESS MY HAND AND OFFICIAL SEAL.

_J Phan_

Notary Signature

> J. PHAN
> Comm. #2186531
> Notary Public · California
> Sacramento County
> Comm. Expires Mar 28, 2021

DT.DOC

Filed 09/30/19
Filed 05/14/19

Case 19-21640
Case 19-21640

Doc 121
Claim 2-1

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:   THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO REQUIRE PAYMENT OF THE LENDER'S ATTORNEY'S FEES IN BANKRUPTCY CASES.

THIS PROTECTION OF LENDER'S SECURITY RIDER is made **August 28, 2018,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure borrower's note to **OCRE INVESTMENT FUND 1 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: **30 MERLIN COURT, OAKLAND, CA 94605** - (Property Address).

AMENDED COVENANT. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
In addition to the uniform covenant contained in section 8 of the Security Instrument, the following information is added:

8. Protection of Lender's Security. If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, the Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice form Lender to borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDER.

_Debora Miller Zuranich_                    8/29/18

DEBORA MILLER-ZURANICH /Borrower /Date

K_RIDER.DOC

Filed 09/30/19

Filed 05/14/19

Case 19-21640

Case 19-21640

Doc 121

Claim 2-1

# RIDER TO DEED OF TRUST
## ASSIGNMENT OF RENTS AND PROFITS
## AND SECURITY AGREEMENT

**THIS RIDER** is made this **August 28, 2018** and is incorporate into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to **CHICAGO TITLE COMPANY**, as Trustee for the benefit of **OCRE INVESTMENT FUND 1 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** ("Lender") and covering the Property described in the Deed of Trust and located at **30 MERLIN COURT, OAKLAND, CA 94605.**

### 1. Assignment of Rents, Revenues and Profits

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the said Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under this Deed of Trust. Prior to the occurrence of any Event of Default Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust hereof shall be deemed to make Lender a "mortgagee in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b) Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating cost and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

### 2. Security Agreement  
This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with said Property, including, without limiting, any and all personal property necessary for the operation and maintenance of a health and racquet club on said Property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) Any and all items of property specified above as part of the Property which, under applicable law, constitute fixtures and may be subject to a security interest under Section 9-313 of the California Uniform Commercial Code.

Filed 09/30/19
Filed 05/14/19

Case 19-21640
Case 19-21640

Doc 121
Claim 2-1

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefore and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to said property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under California Uniform Commercial Code, including, Section 9501 (4) thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1) The replacements for such items of personal property or fixtures are of equivalent value and quality;

(2) Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3) At the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code Sections 9334 and/or 9604.

**IN WITNESS WHEREOF**, Borrowers have executed this Rider as of the date first above written.

_____          8/29/18
DEBORA MILLER-ZURANICH - Borrower                                   Date

ASSRENT1.DOC

# RIDER TO DEED OF TRUST

The following provisions are a part of and incorporated into that certain Deed of Trust with Assignment of Rents dated as of **August 28, 2018**, by and between **DEBORA MILLER-ZURANICH** ("Trustor"), **CHICAGO TITLE COMPANY** ("Trustee") and **OCRE INVESTMENT FUND 1 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** ("Beneficiary").

### Assignment of Rent and Profits

**(a) Present Assignment.** All of Trustor's interest in any leases or other occupancy agreements pertaining to the Property now existing or hereafter entered into, and all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all prepaid rents and security deposits (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note and under this Deed of Trust subject to the rights of residential tenants under California Civil Code Section 1950.5(d). Beneficiary waives the right to exercise the rights and powers assigned to Beneficiary herein and agrees not to revoke such waiver until and unless an event of acceleration (as set forth in Section 4 below) occurs. It is understood and agreed that neither the foregoing assignment of Rents and Profits to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies hereunder shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Beneficiary, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor, or the entering into possession of the Property or any part thereof by such received, be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property. Upon the occurrence of any event of default, this shall constitute a direction to and full authority to each lessee under any lease to pay all Rents and Profits to Beneficiary without proof of the default. Trustor hereby irrevocably authorizes each lessee to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any Rents and Profits due or to become due.

**(b) Application of Rents.** Trustor shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, and debt service on the indebtedness secured hereby, before using the Rents and Profits for the Trustor's personal use or any other purpose not for the direct benefit of the Property.

**(c) Notice to Tenants.** Trustor shall at all times perform the obligations of lessor under all such leases. Trustor shall at any time or from time to time, upon request of Beneficiary, transfer and assign to Beneficiary in such form as may be satisfactory to Beneficiary, Trustor's interest in any lease, subject to and upon the condition, however, that prior to the occurrence of any event of default hereunder Trustor shall have a license to collect and receive all Rents and Profits under such lease upon accrual, but not prior thereto, as set forth in Paragraph (a) above. Whenever requested by Beneficiary, Trustor shall furnish to Beneficiary a certificate of Trustor setting forth the names of all lessees under any leases, the terms of their respective leases, the space occupied, the rents payable hereunder, and the dates through which any and all rents have been paid.

**(d) Attornment.** Each lease for any part of the Property, shall make provision for the Attornment of the lessee hereunder to any person succeeding to the interest of Trustor as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

**(e) Direct Creditor.** Beneficiary shall be deemed to be the creditor of each lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor-relief proceedings affecting such lessee (without obligation on the part of Beneficiary, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein). Beneficiary shall have the right to assign Trustor's right, title and interest in any leases to any subsequent holder of this Deed of Trust or any participating interest therein or to any person acquiring title to all or any part of the Property through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Beneficiary. Beneficiary shall have the authority, as Trustor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Trustor and to bind Trustor on all papers and documents relating to the operation, leasing and maintenance of the Property.

**(f) Miscellaneous.** _____

_____    _____
DEBORA MILLER-ZURANICH - Borrower                           8/29/18
                                                            Date

ASSRENT2.DOC

## EXHIBIT "A"
### Legal Description

For APN/Parcel ID(s):  048-6298-064-00

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 6 OF TRACT 2068 ACCORDING TO THE MAP THEREOF, FILED OCTOBER 21, 1959 IN THE OFFICE OF THE COUNTY RECORDER OF SAID ALAMEDA COUNTY, AND OF RECORD IN MAP BOOK 41, PAGE 48.

EXHIBIT "2"

PACER DOCKET FOR CASE NO 17-31036-HLB

FILED BY DEBTOR IN NORTHERN DISTRICT COURT OF
CALIFORNIA

SAN FRANCISCO DIVISION ON OCTOBER 16, 2017

**PlnDue, DebtEd, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of California (San Francisco)
### Bankruptcy Petition #: 17-31036

*Date filed:* 10/16/2017
*Date terminated:* 01/16/2018
*Debtor dismissed:* 11/03/2017
*341 meeting:* 11/30/2017

*Assigned to:* Judge Hannah L. Blumenstiel
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

*Debtor*
**Deborah Miller Zuranich**
3053 Fillmore St #245
San Francisco, CA 94123
SAN FRANCISCO-CA
SSN / ITIN: xxx-xx-6813
Tax ID / EIN: 46-6330088
*dba* **Joseph J. Miller Living Trust**
*aka* **Deborah Leigh Miller**

represented by **Deborah Miller Zuranich**
PRO SE

*Trustee*
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

*U.S. Trustee*
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 10/16/2017 | <u>1</u><br>(8 pgs) | Chapter 13 Voluntary Petition Individual, Fee Amount $310. Filed by Deborah Zuranich Miller . Incomplete Filings due by 10/30/2017. Order Meeting of Creditors due by 11/15/2017. (lb) CORRECTIVE ENTRY: Clerk terminated chapter 13 plan deadline and modified docket text to reflect the same ; Clerk modified debtor's name and address to reflect PDF.; Clerk modified nature of debt to reflect PDF. Modified on 10/18/2017 (myt). (Entered: 10/16/2017) |
| 10/16/2017 | <u>2</u> | Statement of Social Security Number. Filed by Debtor Deborah Zuranich Miller (lb) (Entered: 10/16/2017) |

| 10/16/2017 | <u>3</u><br>(2 pgs) | Creditor Matrix Filed by Debtor Deborah Zuranich Miller (lb) (Entered: 10/16/2017) |
| 10/16/2017 | | Receipt of Filing Fee for Chapter 13 Voluntary Petition. Amount 310.00 from Deborah Zuranich. Receipt Number 40100959. (admin) (Entered: 10/16/2017) |
| 10/17/2017 | <u>4</u><br>(3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 11/30/2017 at 11:00 AM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 1/29/2018 Proofs of Claims due by 2/28/2018 Last day to object to confirmation is 11/30/2017 **Confirmation Hearing scheduled for 12/20/2017 at 10:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (tm)) (Entered: 10/17/2017) |
| 10/17/2017 | <u>5</u><br>(1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) (Entered: 10/17/2017) |
| 10/17/2017 | <u>6</u><br>(1 pg) | Certification of exigent circumstances that merits a waiver from complying with the credit counseling requirement. Filed by Debtor Deborah Zuranich Miller (cp) (Entered: 10/17/2017) |
| 10/18/2017 | <u>7</u><br>(3 pgs; 2 docs) | Order to File Required Documents and Notice of Automatic Dismissal (myt) (Entered: 10/18/2017) |
| 10/18/2017 | <u>8</u><br>(4 pgs; 2 docs) | Order to File Explanation of Exigent Circumstances. Debtor shall file an Explanation within 10 days of entry of this order or the case will be dismissed. (RE: related document(s)<u>6</u> Certification of Exigent Circumstances filed by Debtor Deborah Miller Zuranich). (dmf) (Entered: 10/18/2017) |
| 10/20/2017 | <u>9</u><br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) <u>4</u> Meeting of Creditors Chapter 13). Notice Date 10/20/2017. (Admin.) (Entered: 10/20/2017) |
| 10/20/2017 | <u>10</u><br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>7</u> Order to File Missing Documents). Notice Date 10/20/2017. (Admin.) (Entered: 10/20/2017) |
| 10/20/2017 | <u>11</u><br>(4 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>8</u> Order). Notice Date 10/20/2017. (Admin.) (Entered: 10/20/2017) |
| 10/23/2017 | <u>12</u><br>(4 pgs) | Request for Notice Filed by Creditor U.S. Bank Trust National Association, as Trustee for Towd Point Master Funding Trust 2014-I2 (Fujimoto, Daniel) (Entered: 10/23/2017) |
| 11/03/2017 | <u>13</u><br>(2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)<u>8</u> Order). (myt) (Entered: 11/03/2017) |
| 11/05/2017 | <u>14</u><br>(2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) <u>13</u> Order and |

| | | Notice of Dismissal for Failure to Comply). Notice Date 11/05/2017. (Admin.) (Entered: 11/05/2017) |
|---|---|---|
| 12/11/2017 | 15 (3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 01/10/2018 (Burchard, David (cm)) (Entered: 12/11/2017) |
| 12/15/2017 | 16 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 15 Trustee's Chapter 12/13 Final Report and Notice). Notice Date 12/15/2017. (Admin.) (Entered: 12/15/2017) |
| 01/11/2018 | 17 (2 pgs; 2 docs) | Order Discharging Chapter 13 Trustee After Dismissal and Final Decree (admin) (Entered: 01/15/2018) |
| 01/16/2018 | | Bankruptcy Case Closed. (dmf) (Entered: 01/16/2018) |
| 01/18/2018 | 18 (2 pgs) | BNC Certificate of Mailing (RE: related document(s) 17 Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 01/18/2018. (Admin.) (Entered: 01/18/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/06/2019 14:43:55 | | | |
| PACER Login: | wolfewyman1:4802419:0 | Client Code: | 8888-001 |
| Description: | Docket Report | Search Criteria: | 17-31036 Fil or Ent: filed From: 1/1/2017 To: 8/6/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |

<u>**EXHIBIT "3"**</u>

**PACER DOCKET FOR CASE NO. 18-31023-HLB**

**FILED BY DEBTOR IN THE NORTHERN CALIFORNIA DISTRICT
COURT SAN FRANCISCO ON SEPTEMBER 18, 2018**

**PlnDue, DebtEd, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of California (San Francisco)
## Bankruptcy Petition #: 18-31023

*Assigned to:* Judge Hannah L. Blumenstiel
Chapter 13
Voluntary
Asset

*Date filed:* 09/18/2018
*Date terminated:* 01/16/2019
*Debtor dismissed:* 11/08/2018
*341 meeting:* 11/15/2018

*Debtor disposition:* Dismissed for Failure to File
Information

**Debtor**
**Deborah Miller Zuranich**
3053 Fillmore St #245
San Francisco, CA 94123
SAN FRANCISCO-CA
SSN / ITIN: xxx-xx-6813
Tax ID / EIN: 46-6330088
*aka* **Deborah Leigh Miller**
*dba* **Joseph J. Miller Living Trust dated October 8, 2007**

represented by **Deborah Miller Zuranich**
PRO SE

**Trustee**
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

**U.S. Trustee**
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 09/18/2018 | <u>1</u><br>(8 pgs) | Chapter 13 Voluntary Petition Individual, Fee Amount $0.00. Filed by Deborah Miller Zuranich . Incomplete Filings due by 10/2/2018. Order Meeting of Creditors due by 10/18/2018. Chapter 13 Plan due by 10/2/2018. (lj) Modified on 9/18/2018 (lj). (Entered: 09/18/2018) |
| 09/18/2018 | <u>2</u> | Statement of Social Security Number. Filed by Debtor Deborah Miller Zuranich (lj) (Entered: 09/18/2018) |

| 09/18/2018 | <u>3</u><br>(2 pgs) | Creditor Matrix Filed by Debtor Deborah Miller Zuranich (lj) (Entered: 09/18/2018) |
|---|---|---|
| 09/18/2018 | <u>4</u><br>(1 pg) | Application to Pay Filing Fee in Installments Filed by Debtor Deborah Miller Zuranich (lj) (Entered: 09/18/2018) |
| 09/19/2018 | | Notice of Debtor's Prior Filings for debtor Deborah Miller Zuranich Case Number <u>17-31036</u>, Chapter 13 filed in California Northern Bankruptcy Court on 10/16/2017 , Dismissed for Other Reason on 11/03/2017.(Admin) (Entered: 09/19/2018) |
| 09/19/2018 | <u>5</u><br>(3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 10/18/2018 at 01:00 PM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 12/17/2018 Proofs of Claims due by 11/27/2018 Last day to object to confirmation is 10/18/2018 **Confirmation Hearing scheduled for 11/21/2018 at 11:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (rg)) (Entered: 09/19/2018) |
| 09/19/2018 | <u>6</u><br>(3 pgs; 2 docs) | Order to File Required Documents and Notice of Automatic Dismissal. (kl) (Entered: 09/19/2018) |
| 09/19/2018 | <u>7</u><br>(1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) (Entered: 09/19/2018) |
| 09/19/2018 | <u>8</u><br>(3 pgs; 2 docs) | Order Re: Chapter 13 Plan Payments and Adequate Protection Payments (admin) (Entered: 09/19/2018) |
| 09/21/2018 | <u>9</u><br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) <u>5</u> Meeting of Creditors Chapter 13). Notice Date 09/21/2018. (Admin.) (Entered: 09/20/2018) |
| 09/21/2018 | <u>10</u><br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>6</u> Order to File Missing Documents). Notice Date 09/21/2018. (Admin.) (Entered: 09/20/2018) |
| 09/21/2018 | <u>11</u><br>(2 pgs; 2 docs) | Order and Notice Regarding Failure to Pay Filing Fee (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13) filed by Debtor Deborah Miller Zuranich). Non-Compliance (Payments) due by 10/5/2018. (kl) (Entered: 09/21/2018) |
| 09/22/2018 | <u>12</u><br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>8</u> Order Re Ch 13 Plan and Adequate Protection Payments). Notice Date 09/22/2018. (Admin.) (Entered: 09/22/2018) |
| 09/23/2018 | <u>13</u><br>(2 pgs) | BNC Certificate of Mailing - Fail to Pay Filing Fees. (RE: related document(s) <u>11</u> Order to Pay Filing Fee). Notice Date 09/23/2018. (Admin.) (Entered: 09/23/2018) |
| 10/01/2018 | | Receipt of Filing Fee for Chapter 13 Voluntary Petition. Amount 210.00 from Deborah Miller Zuranich. Receipt Number |

| | | |
|---|---|---|
| | | 30064949. (admin) (Entered: 10/01/2018) |
| 10/02/2018 | <u>14</u><br>(1 pg) | Motion for Extension of Time to File Required Documents Filed by Debtor Deborah Miller Zuranich (ka) (Entered: 10/02/2018) |
| 10/02/2018 | | Receipt of Filing Fee for Chapter 13 Voluntary Petition. Amount 100.00 from Deborah Miller Zuranich. Receipt Number 30064952. (admin) (Entered: 10/02/2018) |
| 10/03/2018 | <u>15</u><br>(4 pgs; 2 docs) | Order Granting Motion For Extension Of Time To File Required Documents (Related Doc # <u>14</u>) Incomplete Filings due by 10/16/2018 for <u>1</u>, (rdr) (Entered: 10/03/2018) |
| 10/05/2018 | <u>16</u><br>(4 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>15</u> Order on Motion to Extend Time). Notice Date 10/05/2018. (Admin.) (Entered: 10/05/2018) |
| 10/16/2018 | <u>17</u><br>(2 pgs) | Motion for Extension of Time to File Required Documents Fed. Rule Bankruptcy Procedure 1007(c) and Motion to Continue 341 Mtg (RE: related document(s)<u>5</u> Meeting of Creditors Chapter 13) . Filed by Debtor Deborah Miller Zuranich (myt) (Entered: 10/16/2018) |
| 10/17/2018 | <u>18</u><br>(4 pgs; 2 docs) | Order Granting Motion For Extension of Time to File Required Documents and Denying Motion to Continue Section 341 Meeting (Related Doc # <u>17</u>) Incomplete Filings due by 11/1/2018 for <u>1</u>, (rdr) (Entered: 10/17/2018) |
| 10/18/2018 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued. Next Meeting of Creditors to be Held on 11/15/2018 at 02:00 PM at Office of the U.S. Trustee Office 450 Debtor absent. (Burchard, David) (Entered: 10/18/2018) |
| 10/18/2018 | | Case is transferred to the Chapter 13 Pending List pursuant to the Chapter 13 Calendar Procedures posted on the Court's Website and Chapter 13 Trustee's Website. Confirmation Hearing off calendar . (Burchard, David (rg)) (Entered: 10/18/2018) |
| 10/19/2018 | <u>19</u><br>(4 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>18</u> Order on Motion to Extend Time). Notice Date 10/19/2018. (Admin.) (Entered: 10/19/2018) |
| 11/08/2018 | <u>20</u><br>(2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)<u>18</u> Order Granting Motion For Extension of Time to File Required Documents and Denying Motion to Continue Section 341 Meeting). Case Management Action due after 12/24/2018. (ka) (Entered: 11/08/2018) |
| 11/10/2018 | <u>21</u><br>(2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) <u>20</u> Order and |

|  |  |  |
|---|---|---|
|  |  | Notice of Dismissal for Failure to Comply). Notice Date 11/10/2018. (Admin.) (Entered: 11/10/2018) |
| 11/16/2018 | 22 (3 pgs) | Motion to Vacate Dismissal (RE: related document(s)20 Order and Notice of Dismissal for Failure to Comply) Filed by Debtor Deborah Miller Zuranich. (With Certificate of Service) (ka) (Entered: 11/16/2018) |
| 12/13/2018 | 23 (3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 01/14/2019 (Burchard, David (lh)) (Entered: 12/13/2018) |
| 12/16/2018 | 24 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 23 Trustee's Chapter 12/13 Final Report and Notice). Notice Date 12/16/2018. (Admin.) (Entered: 12/16/2018) |
| 01/16/2019 | 25 (3 pgs; 2 docs) | Order Denying Motion To Vacate Dismissal (Related Doc # 22) (bg) (Entered: 01/16/2019) |
| 01/16/2019 | 26 (2 pgs; 2 docs) | Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree (RE: related document(s)23 Trustee's Chapter 12/13 Final Report and Notice). (pw) (Entered: 01/16/2019) |
| 01/16/2019 |  | Bankruptcy Case Closed. (pw) (Entered: 01/16/2019) |
| 01/18/2019 | 27 (2 pgs) | BNC Certificate of Mailing (RE: related document(s) 26 Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 01/18/2019. (Admin.) (Entered: 01/18/2019) |
| 01/18/2019 | 28 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 25 Order on Motion to Vacate). Notice Date 01/18/2019. (Admin.) (Entered: 01/18/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/06/2019 14:41:08 | | | |
| **PACER Login:** | wolfewyman1:4802419:0 | **Client Code:** | 8888-001 |
| **Description:** | Docket Report | **Search Criteria:** | 18-31023 Fil or Ent: filed From: 1/1/2018 To: 8/6/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html |

|  |  |  | Page counts for documents: included |
|---|---|---|---|
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

## EXHIBIT "4"

### PACER DOCKET FOR CASE NO. 18-31252-HLB

### FILED BY DEBTOR IN THE NORTHERN CALIFORNIA DISTRICT COURT SAN FRANCISCO ON NOVEMBER 20, 2018

**PlnDue, FeeDueINST, DebtEd, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of California (San Francisco)
## Bankruptcy Petition #: 18-31252

|  |  |
|---|---|
| *Assigned to:* Judge Hannah L. Blumenstiel | *Date filed:* 11/20/2018 |
| Chapter 13 | *Date terminated:* 02/13/2019 |
| Voluntary | *Debtor dismissed:* 12/21/2018 |
| Asset | *341 meeting:* 01/10/2019 |

*Debtor disposition:* Dismissed for failure to pay filing fee

| | |
|---|---|
| *Debtor*<br>**Deborah Miller Zuranich**<br>3053 Fillmore St #245<br>San Francisco, CA 94123<br>SAN FRANCISCO-CA<br>SSN / ITIN: xxx-xx-6813<br>Tax ID / EIN: 46-6330088<br>*aka* **Deborah Leigh Miller**<br>*dba* **Joseph J. Miller Living Trust dated October 8, 2007** | represented by **Deborah Miller Zuranich**<br>PRO SE |

*Trustee*
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

*U.S. Trustee*
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 11/20/2018 | [1](#)<br>(8 pgs) | Chapter 13 Voluntary Petition Individual, Filing fee not paid. Filed by Deborah Miller Zuranich . Incomplete Filings due by 12/4/2018. Order Meeting of Creditors due by 12/20/2018. Chapter 13 Plan due by 12/4/2018. (kl) (Entered: 11/20/2018) |
| 11/20/2018 | [2](#)<br>(2 pgs) | Creditor Matrix Filed by Debtor Deborah Miller Zuranich. (kl) (Entered: 11/20/2018) |
| 11/20/2018 | [3](#) | Application to Pay Filing Fee in Installments Filed by Debtor |

| | | |
|---|---|---|
| | (1 pg) | Deborah Miller Zuranich . (kl) (Entered: 11/20/2018) |
| 11/20/2018 | 4 (2 pgs; 2 docs) | Order Granting Application To Pay Filing Fees In Installments. (Related Doc # 3). Second Installment Payment due by 12/20/2018. Third Installment Payment due by 1/22/2019. Final Installment Payment due by 2/19/2019. (wbk) (Entered: 11/20/2018) |
| 11/21/2018 | | Notice of Debtor's Prior Filings for debtor Deborah Miller Zuranich Case Number 18-31023, Chapter 13 filed in California Northern Bankruptcy Court on 09/18/2018; Case Number 17-31036, Chapter 13 filed in California Northern Bankruptcy Court on 10/16/2017 , Dismissed for Other Reason on 11/03/2017.(Admin) (Entered: 11/21/2018) |
| 11/21/2018 | 5 (1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) DEFECTIVE ENTRY: PDF reflects incorrect debtor name. Modified on 11/21/2018 (ka). (Entered: 11/21/2018) |
| 11/21/2018 | 6 (3 pgs; 2 docs) | Order Re: Chapter 13 Plan Payments and Adequate Protection Payments (admin) (Entered: 11/21/2018) |
| 11/22/2018 | 7 (2 pgs) | BNC Certificate of Mailing - Order for Payment of Filing Fees in Installments . (RE: related document(s) 4 Order on Application to Pay Filing Fees in Installments). Notice Date 11/22/2018. (Admin.) (Entered: 11/22/2018) |
| 11/25/2018 | 8 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 6 Order Re Ch 13 Plan and Adequate Protection Payments). Notice Date 11/25/2018. (Admin.) (Entered: 11/25/2018) |
| 11/30/2018 | 9 (2 pgs) | Request for Notice Filed by Creditor Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2006-AR3 (Wong, Jennifer) (Entered: 11/30/2018) |
| 12/04/2018 | 10 (2 pgs) | Motion for Extension of Time to File Required Documents Fed. Rule Bankruptcy Procedure 1007(c) and Motion to Continue 341 Meeting Filed by Debtor Deborah Miller Zuranich (myt) (Entered: 12/05/2018) |
| 12/05/2018 | 11 (2 pgs) | Amended Motion for Extension of Time to File Required Documents Fed. Rule Bankruptcy Procedure 1007(c) and Motion to Continue 341 Meeting (RE: related document(s)10Motion for Extension of Time) Filed by Debtor Deborah Miller Zuranich (myt). CORRECTIVE ENTRY: Clerk added linkage to document #10. Modified on 12/5/2018 (klr). (Entered: 12/05/2018) |
| 12/07/2018 | 13 (4 pgs; 2 docs) | Order Granting Motion to Extend Time To File Required Documents (Related Doc # 11) Incomplete Filings due by 1/4/2019 for 1, (rdr) (Entered: 12/11/2018) |

| | | |
|---|---|---|
| 12/11/2018 | <u>12</u><br>(3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 1/10/2019 at 01:00 PM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 3/11/2019 Proofs of Claims due by 1/29/2019 Last day to object to confirmation is 1/10/2019 **Confirmation Hearing scheduled for 2/20/2019 at 11:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (tm)) (Entered: 12/11/2018) |
| 12/13/2018 | <u>14</u><br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) <u>12</u> Meeting of Creditors Chapter 13). Notice Date 12/13/2018. (Admin.) (Entered: 12/13/2018) |
| 12/13/2018 | <u>15</u><br>(4 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>13</u> Order on Motion to Extend Time). Notice Date 12/13/2018. (Admin.) (Entered: 12/13/2018) |
| 12/21/2018 | <u>16</u><br>(2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)<u>4</u> Order on Application to Pay Filing Fees in Installments). Case Management Action due after 2/4/2019. (ka) (Entered: 12/21/2018) |
| 12/21/2018 | | Receipt of Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 104.00 from Deborah Miller Zuranich. Receipt Number 30065066. (admin) (Entered: 12/21/2018) |
| 12/23/2018 | <u>17</u><br>(2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) <u>16</u> Order and Notice of Dismissal for Failure to Comply). Notice Date 12/23/2018. (Admin.) (Entered: 12/23/2018) |
| 01/07/2019 | <u>18</u><br>(3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 02/6/2019 (Burchard, David (cm)) (Entered: 01/07/2019) |
| 01/10/2019 | <u>19</u><br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>18</u> Trustee's Chapter 12/13 Final Report and Notice). Notice Date 01/10/2019. (Admin.) (Entered: 01/10/2019) |
| 02/07/2019 | <u>20</u><br>(2 pgs; 2 docs) | Order Discharging Chapter 13 Trustee After Dismissal and Final Decree (admin) (Entered: 02/11/2019) |
| 02/13/2019 | | Bankruptcy Case Closed. (tp) (Entered: 02/13/2019) |
| 02/14/2019 | <u>21</u><br>(2 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>20</u> Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 02/14/2019. (Admin.) (Entered: 02/14/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/06/2019 14:41:45 | | | |
| **PACER Login:** | wolfewyman1:4802419:0 | **Client Code:** | 8888-001 |
| **Description:** | Docket Report | **Search Criteria:** | 18-31252 Fil or Ent: filed From: 1/1/2018 To: 8/6/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## EXHIBIT "5"

**PACER DOCKET FOR CASE NO. 19-30034-HLB**

**FILED BY DEBTOR IN THE NORTHERN CALIFORNIA DISTRICT
COURT SAN FRANCISCO ON JANUARY 11, 2019**

**FilingFeeDue, PlnDue, DebtEd, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of California (San Francisco)
## Bankruptcy Petition #: 19-30034

| | |
|---|---|
| | *Date filed:* 01/11/2019 |
| *Assigned to:* Judge Hannah L. Blumenstiel | *Date terminated:* 03/19/2019 |
| Chapter 13 | *Debtor dismissed:* 01/28/2019 |
| Voluntary | *341 meeting:* 02/14/2019 |
| Asset | |

*Debtor disposition:* Dismissed for Failure to File
Information

**Debtor**                                      represented by **Deborah Miller Zuranich**
**Deborah Miller Zuranich**                                          PRO SE
3053 Filmore St #245
San Francisco, CA 94123
SAN FRANCISCO-CA
SSN / ITIN: xxx-xx-6813
Tax ID / EIN: 46-6330088
*aka* **Deborah Leigh Miller**
*dba* **Joseph J. Miller Living Trust Dated 10/7/2007**

**Trustee**
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

**U.S. Trustee**
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 01/11/2019 | 1 (10 pgs) | Chapter 13 Voluntary Petition Individual, Fee Amount $0.00. Filed by Deborah Miller Zuranich . Incomplete Filings due by 1/25/2019. Order Meeting of Creditors due by 2/11/2019. Chapter 13 Plan due by 1/25/2019. (dc) DEFECTIVE ENTRY: No selection made on Boxes 19 and 20. Modified on 1/11/2019 (wbk). (Entered: 01/11/2019) |
| 01/11/2019 | 2 (1 pg) | Application to Pay Filing Fee in Installments. Filed by Debtor Deborah Miller Zuranich (dc) (Entered: 01/11/2019) |

| | | |
|---|---|---|
| 01/11/2019 | [3](#) | Statement of Social Security Number. Filed by Debtor Deborah Miller Zuranich (dc) (Entered: 01/11/2019) |
| 01/11/2019 | [4](#)<br>(1 pg) | Certificate of Credit Counseling. Filed by Debtor Deborah Miller Zuranich (dc) (Entered: 01/11/2019) |
| 01/11/2019 | [5](#)<br>(3 pgs; 2 docs) | Order to File Required Documents and Notice of Automatic Dismissal. (wbk) (Entered: 01/11/2019) |
| 01/12/2019 | [6](#)<br>(1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) (Entered: 01/12/2019) |
| 01/12/2019 | [9](#)<br>(3 pgs; 2 docs) | Order Re: Chapter 13 Plan Payments and Adequate Protection Payments (admin) (Entered: 01/14/2019) |
| 01/13/2019 | [7](#)<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) [5](#) Order to File Missing Documents). Notice Date 01/13/2019. (Admin.) (Entered: 01/13/2019) |
| 01/14/2019 | | Notice of Debtor's Prior Filings for debtor Deborah Miller Zuranich Case Number [18-31023](#), Chapter 13 filed in California Northern Bankruptcy Court on 09/18/2018; Case Number [18-31252](#), Chapter 13 filed in California Northern Bankruptcy Court on 11/20/2018; Case Number [17-31036](#), Chapter 13 filed in California Northern Bankruptcy Court on 10/16/2017 , Dismissed for Other Reason on 11/03/2017.(Admin) (Entered: 01/14/2019) |
| 01/14/2019 | [8](#)<br>(3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 2/14/2019 at 02:00 PM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 4/15/2019 Proofs of Claims due by 3/22/2019 Last day to object to confirmation is 2/14/2019 **Confirmation Hearing scheduled for 3/20/2019 at 11:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (rg)) (Entered: 01/14/2019) |
| 01/14/2019 | [10](#)<br>(3 pgs; 2 docs) | Order Denying Application To Pay Filing Fees In Installments. (Related Doc # [2](#)). Full Filing Fee due by 1/29/2019. (bg) (Entered: 01/15/2019) |
| 01/16/2019 | [11](#)<br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) [8](#) Meeting of Creditors Chapter 13). Notice Date 01/16/2019. (Admin.) (Entered: 01/16/2019) |
| 01/17/2019 | [12](#)<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) [9](#) Order Re Ch 13 Plan and Adequate Protection Payments). Notice Date 01/17/2019. (Admin.) (Entered: 01/17/2019) |
| 01/17/2019 | [13](#)<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) [10](#) Order on Application to Pay Filing Fees in Installments). Notice Date 01/17/2019. (Admin.) (Entered: 01/17/2019) |

| 01/28/2019 | 14 (2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)5 Order to File Missing Documents). Case Management Action due after 3/14/2019. (aw) (Entered: 01/28/2019) |
| 01/30/2019 | 15 (2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) 14 Order and Notice of Dismissal for Failure to Comply). Notice Date 01/30/2019. (Admin.) (Entered: 01/30/2019) |
| 02/12/2019 | 16 (3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 03/14/2019 (Burchard, David (lh)) (Entered: 02/12/2019) |
| 02/14/2019 | 17 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 16 Trustee's Chapter 12/13 Final Report and Notice). Notice Date 02/14/2019. (Admin.) (Entered: 02/14/2019) |
| 03/15/2019 | 18 (2 pgs; 2 docs) | Order Discharging Chapter 13 Trustee After Dismissal and Final Decree (admin) (Entered: 03/18/2019) |
| 03/19/2019 |  | Bankruptcy Case Closed. (lj) (Entered: 03/19/2019) |
| 03/21/2019 | 19 (2 pgs) | BNC Certificate of Mailing (RE: related document(s) 18 Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 03/21/2019. (Admin.) (Entered: 03/21/2019) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 08/06/2019 14:42:08 | | | |
| PACER Login: | wolfewyman1:4802419:0 | Client Code: | 8888-001 |
| Description: | Docket Report | Search Criteria: | 19-30034 Fil or Ent: filed From: 1/1/2019 To: 8/6/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )    ss.
COUNTY OF SACRAMENTO         )

I, Beverley Tomlin-Hill, declare:

I am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action. My business address is 980 9th Street, Suite 2350, Sacramento, California 95814.

On September 30, 2019, I served the document(s) described as **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO CONVERT OR DISMISS CHAPTER 11 BANKRUPTCY CASE** on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

☒      **BY MAIL:** as follows:
☐      **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Sacramento, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐      **BY ELECTRONIC SERVICE** as follows: I, Name, whose e-mail address is Email@wolfewyman.com, caused such document(s) to be transmitted at time a.m./p.m. to the electronic mailing address of the addressee listed on the attached service list by use of electronic mail. The electronic service of the document(s) complied with California Rules of Court, Rule 2.251 in that it was pursuant to court order, local rule, stipulation of the parties or the consent of the addressee. A copy of the original document bearing original signatures will be available for inspection upon request per California Rules of Court, Rule 2.257. All addressees have been provided with the sender's electronic service address.

☒      **BY ELECTRONIC MAIL** as follows: I hereby certify that I electronically transmitted the attached document(s) to the U.S. District Court using the CM/ECF System for filing, service and transmittal of Notice of Electronic Filing to the CM/ECF registrants for this case. Upon completion of the electronic transmission of said document(s), a receipt is issued to the serving party acknowledging receipt by ECF's system, which will be maintained with the original document(s) in our office.

☐      **BY OVERNIGHT COURIER SERVICE** as follows: I caused such envelope to be delivered by overnight courier service to the offices of the addressee. The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

☐      **BY FACSIMILE** as follows: I caused such documents to be transmitted to the telephone number of the addressee listed on the attached service list, by use of facsimile machine telephone number. The facsimile machine used complied with California Rules of Court, Rule 2004 and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), a transmission record of the transmission was printed.

☒      **FEDERAL** as follows: I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on September 30, 2019, at Sacramento, California.

_____
Beverley Tomlin- Hill

3

3459903.1

**SERVICE LIST**
**U.S. District Bankruptcy Court of California – Sacramento Division**
**Case No.: 19-2160**
**DEBORA LEIGH MILLER-ZURANICH**
**W&W File No. 1760-006**
**[Revised: August 2019]**

Deborah Leigh Miller-Zuranich
9369 Newington Way
Elk Grove, CA 95758

Tel:  (916) 952-0116
Email:

Peter L. Cianchetta
8788 Elk Grove Blvd., Suite 2A.
Elk Grove, CA 95624

Tel: (916) 685-7878
Email: *plc@eqlaw.net*

Office of the U,S, Trustee
Cameron Gulden
300 Booth Street, #3009
Reno, NV 89509

Office of the United States Trustee
2500 Tulare Avenue, #1401
Fresno, CA 93721
Attn:  Robin Tubesing

**Creditors:**

Crystal Shores East Association
P.O. Box 5311
Incline Villae, NV 89450

LVNV Funding, LLC
Resurgent Capital Services
P.O. HBox 10587
Greenville, SC 29603-0587

Washoe County Treasurer
P.O. Box 30039
Reno, NV 89520-3039

Internal Revenue Services
4330 Watt Avenue, SA-5210
Sacramento, CA 95821
Attn:  Insolvency, Group 3

4

3459903.1

**SERVICE LIST**
**U.S. District Bankruptcy Court of California – Sacramento Division**
**Case No.: 19-2160**
**DEBORA LEIGH MILLER-ZURANICH**
**W&W File No. 1760-006**
**[Revised: August 2019]**

**SERVICE LIST**

**Creditor's cont'd**

Hall of Mortgage Fund LLC
6200 E. Canyon Rim Road
Anaheim Hills, CA 92807

Joseph J. Miller Trust
9369 Newington Way
Elk Grove, CA 95758

Select Portfolio Services
P.O. Box 65250
Salt Lake City, UT 84165-0250

3459903.1