***14 PAGES***

Dean T. Kirby, Jr. 090114
Roberta S. Robinson 099035
KIRBY & McGUINN, A P.C.
707 Broadway, Suite 1750
San Diego, California 92101-5393
Telephone: (619) 685-4000
Facsimile: (619) 685-4004

Attorneys for Creditor
Hall Mortgage Fund, LP

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>DEBORA LEIGH<br>MILLER - ZURANICH<br><br>Debtor. | Case No. 19-21640<br><br>Chapter 7<br><br>DCN: DTK-2<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY<br>(11 U.S.C. § 362(d)(4)(B))<br><br>DATE: December 3, 2019<br><br>TIME: 9:30 a.m.<br><br>DEPARTMENT B<br>COURTROOM 32<br>501 I Street, Sixth Floor<br>Sacramento, California |

Filed 11/04/19 Case 19-21640 Doc 172

## TABLE OF CONTENTS

I. INTRODUCTION ..........

II. STATEMENT OF FACTS ..........

III. THE STANDARDS FOR IN REM RELIEF ARE MET HERE ..........

IV. IN REM RELIEF IS NECESSARY ..........

V. GRANTING RELIEF WOULD HAVE NO IMPACT ON CREDITORS ..........

VI. CONCLUSION ..........

i

MEMORANDUM IN SUPPORT OF MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY

# TABLE OF AUTHORITIES

CASES

*In re Briggs*,
2012 WL 3780542 (Bankr. N.D. Ill. 2012) .................... 8

*In re Duncan & Forbes Dev., Inc.*,
368 B.R. 27 (Bankr. C.D. Cal. 2006).................... 8

*In re Tejal Inv., LLC*,
2012 WL 6186159 (Bankr. D. Utah 2012) .................... 8

STATUTES

11 U.S.C. §341a .................... 1, 8

11 U.S.C. § 362(c)(4)(A) .................... 5, 9

11 U.S.C. §362(d)(4).................... 1, 7, 8, 9

11 U.S.C. §363(j) .................... 9

I. INTRODUCTION

This Motion is brought by Hall Mortgage Company, the lender under a first trust deed loan on property known as 549 Lakeshore Blvd, #29, Incline Village, Nevada. The loan has been in default since July, 2017. A series of attempted foreclosures has been thwarted by a string of bankruptcy petitions, all of them commenced under chapter 13, filed by same Debtor in two different districts.

After each foreclosure sale was derailed, the Debtor allowed her prior three chapter 13 cases to be dismissed for failure to prosecute. In those cases, she failed even to appear at any of the meetings of creditors scheduled under 11 U.S.C. §341a.

The Incline Village property is not owned by the Debtor. It is owned by an irrevocable trust established by the Debtor's deceased father, Joseph Miller. The Debtor Debora Miller-Zuranich is the trustee under the Joseph Miller Trust. Under an amendment to the Trust Agreement executed by Joseph Miller shortly before his death, the Incline Village property is to be distributed equally to four Miller siblings, of which the Debtor is one. This Amendment provides that the distribution cannot take place until fifteen years after Joseph Miller's death. That anniversary will be in the year 2027.

The Debtor might argue that the automatic stay protects her interest in the Incline Village property, since she is entitled to receive the distribution of a one quarter interest in the property in 2027. While the applicability of the automatic stay debatable, it is nevertheless quite clear that the instant bankruptcy case was filed as part of an ongoing scheme to abuse the bankruptcy system, and that in rem relief from whatever stay might exist is required under 11 U.S.C. §362(d)(4).

The Declaration of Ronda McNeff, filed herewith, shows that Debora Miller-Zuranich acted in concert with her brother, John Miller. For example, it was John Miller who contacted Hall Mortgage about the foreclosure on "his property" and who conveyed news of the Debora's bankruptcy filing. John Miller was in continuous contact with Hall Mortgage, telling tales about his efforts to refinance. It appears that his sister Debora was acting in effect on behalf of the Miller family in filing this series of bad faith petitions to keep the foreclosures at bay. Most recently, Hall Mortgage was approached by the Debtor's sister, Beverley Sopak, about a scheme to transfer the Incline Village property out of the Joseph Miller Trust, in violation of its provisions.

The Millers seem to have little respect for the law and no qualms about using bogus bankruptcy filings, and even a contemplated illegal transfer of the Incline Village property, to stave off foreclosure. Only one remedy will do the job here, and that is in rem relief from the automatic stay.

## II. STATEMENT OF FACTS

According to the public record, the Incline Village Property was transferred to the Joseph J. Miller Living Trust dated October 8, 2007, by deed recorded on October 7, 2011. (Request for Judicial Notice filed herewith ("RJN") Exh 6). Joseph Miller died on September 7, 2012 as evidenced by his Death Certificate (RJN Exh 4). The Hall Mortgage Loan, in the original principal amount of $700,000.00, was secured by a first deed of trust recorded December 29, 2016 (RJN Exh 2). The loan documents were executed on behalf of the Trust by "Debora L. Miller, Successor Trustee."

/ / /

/ / /

/ / /

At the time that the original loan was made, Hall Mortgage was provided with a copy of the Trust Agreement establishing the Joseph J. Miller Trust. That document is 100 pages long. Only relevant portions have been attached to the McNeff Declaration. (McNeff Decl. p. 2 ¶ 3, Exh 3). The Trust Agreement (Art. 6 sec. 1, Mc Neff Decl. Exh. 3 p. 20) provides that it becomes irrevocable upon Joseph Miller's death.

Three amendments to the Joseph Miller Trust were not disclosed to Hall Mortgage until a short time ago, in connection with a proposal by Beverley Sopak for a "sale" of the Incline Village property. The Third Amendment (McNeff Decl. Exh 5), executed by Joseph Miller about two months before his death, provides in part as follows:

> 14. My real property located at 549 Lakeshore Boulevard, Unit 29 in Incline Village, Nevada . . . shall be retained in a Sub-Trust named the Tahoe Sub-Trust. The assets shall be retained in the Tahoe Sub-Trust subject to any encumbrances thereon and the Trustee may rent the assets to produce income. The Tahoe Sub-Trust will be governed by the provisions set forth in the Joseph J. Miller Living Trust dated October 8, 2007 as amended, except that *the Tahoe Sub-Trust will distribute fifteen years after my date of death in equal shares to my four children* by right of representation: Kimberley Miller, Debora Miller, Beverley Sopak and John Miller. [*italics* added]

The Hall Mortgage loan, made in November, 2016 in the original principal amount of $700,000.00, provided for monthly payments until December 21, 2021, the maturity date. The loan is currently in default for failure to make the payment which became due in July, 2017, and all subsequent payments. The loan is also in default for failure to pay real property taxes, which have been delinquent since 2015 and now total $26,575.41, and for failure to pay HOA assessments totaling over $20,446.53. The current balance of the Hall Mortgage loan is about $847,684.38. (McNeff Decl. ¶4 pp. 2-3)

From about the time that the loan was procured, Ms. McNeff, in her capacity as servicing agent for Hall Mortgage, was in regular communication with the Debtor's brother, John R. Miller. Based on these communications, it was clear to Ms. McNeff that John Miller, and not his sister Debora, was making decisions with respect to the Incline Village property. (McNeff Decl. ¶¶ 5-6 p. 3)

Foreclosure of the Deed of Trust was first commenced by the recording of a Notice of Default on April 6, 2018. At John Miller's request Hall Mortgage delayed to set a sale date, based on upon his representation that a sale of property in Oakland California was pending, and that the sale proceeds would be used to cure the default on the Incline Village property. The promised cure payment was never received.

Nevada law limits the number of times that a trustee's sale may be postponed by announcement. After the third postponement, a new Notice of Trustee's Sale must be issued. A new Notice of Trustee's Sale was recorded on August 24, 2018, scheduling the sale date for September 19, 2018. On the day before that sale, Hall Mortgage was notified that Debora Miller-Zuranich had filed a Chapter 13 bankruptcy petition, Case No. 18-31023 in the Northern District of California. (McNeff Decl. ¶8 p. 3)

Debora Miller-Zuranich continued to work the system by filing three more Chapter 13 bankruptcy petitions. The McNeff Declaration recounts in detail the thwarted foreclosure attempts. Those facts need not be repeated in detail here, but they are summarized in the table below. Dockets for the three preceding cases are attached to the Request for Judicial Notice.

/ / /

/ / /

| District / Case No. | Date Filed | Date Dismissed | Comments |
|---|---|---|---|
| N.D. Cal. 18-31023 | 9/18/18 | 11/8/18 | Filed one day before the scheduled Hall Mortgage trustee's sale |
| N.D. Cal. 18-31252 | 11/20/18 | 12/21/18 | Filed 13 minutes before the Hall Mortgage Trustee's sale, making it necessary to rescind the completed sale |
| N.D. Cal. 19-30034 | 1/11/19 | 1/28/19 | Prevented renewal of the Hall Mortgage foreclosure |
| E.D. Cal. 19-21640 | 3/18/19 | Current case | Filed the day of the scheduled Hall Mortgage trustee's sale. |

As set forth in detail in the McNeff Declaration, protective provisions included in amendments to section 362 under BAPCPA have been of no practical help in allowing completion of the Hall Mortgage foreclosure. Under 11 U.S.C. § 362(c)(4)(A), no automatic stay even arose upon the filing of the petitions commencing this bankruptcy case and the one preceding it. Nevertheless, the foreclosure trustee, and another consulted as a possible substituted trustee, would not complete the pending foreclosure without a prior court order entered in the most recent bankruptcy case (McNeff Decl. ¶11 p. 4)

Schedule A/B filed by the Debtor in propria persona on May 5, 2019 (Docket No. 31) lists the Incline Village property and states that the "nature of your ownership interest" is "Trustee of the Joseph J. Miller Trust." That is consistent with the recorded vesting deed and the Hall Mortgage loan documents. Schedule A Part 9, item 23 answers the question "Do you own or control property that someone else owns?" by stating "Yes" and referring to the "condo located on Lake Tahoe" as owned by the Joseph J. Miller Trust.

On May 29, 2019, Mr. Cianchetta filed a substitution of attorney, appearing as counsel for the Debtor. On that same day, he submitted an amendment to Schedule A (Docket No. 46) which changed the information shown for the Incline Village property. Mr. Cianchetta omitted from the amended Schedules any reference to the Joseph J. Miller Trust (other than showing the Trust as a “Co-Debtor” on Schedule H). Amended Schedule A now falsely states that the Incline Village property is owned by the Debtor in “Fee Simple.” Schedule A Part 9 Item 23 answers the question “Do you own or control property that someone else owns?” by stating “No.” Hall Mortgage is not aware of any change in title to the Incline Village property. As indicated by the trust documents, the property could not have been distributed by the Joseph J. Miller Trust to the Debtor in “Fee Simple.” It appears that this amendment to Schedule A was a falsehood intended to wrongly invoke the automatic stay.

Hall Mortgage did not take immediate action to obtain relief from the automatic stay in this latest bankruptcy case because Ms. McNeff was contacted by Ms. Beverley Sopak, the Debtor’s sister. Ms. Sopak told McNeff that she and the other siblings of the Miller family were making arrangements for the Trust to sell the property to her and her husband Kelly Sopak. (McNeff Decl. ¶¶ 13-14, p. 5)

An escrow was opened at First American Title for what Ms. McNeff was told would be a sale of the property by the Trust to the Sopaks. However, based on later discussions with Beverly Sopak, and based upon the documentation (actually, the lack of same) relating to the purported sale of the Incline Village Property, it became clear that there was no actual purchase agreement between the Sopaks and the Trust, and that the Debtor, and the Sopaks, intended to transfer the property out of the Trust without paying its reasonably equivalent value into the Trust. Ms. McNeff was also

told by Ms. Sopak that the transfer was intended to put the property "in the name of" the Sopaks. (McNeff Decl. ¶ 15 pp. 5-6)

After consulting with its attorney, Hall Mortgage has determined that no title insurance company, if fully apprised of the facts, would issue a lender's policy as to any new or refinanced loan made in connection with a transfer of the Incline Village property to one or more of the beneficiaries of the Joseph J. Miller Trust. Hall Mortgage has therefore, through its counsel notified the Sopaks that it does not intend to make such a loan.

III. THE STANDARDS FOR IN REM RELIEF ARE MET HERE

11 U.S.C. § 362(d)(4) provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . .
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property. If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, . . . .

The statutory requirement that the property be affected by "multiple bankruptcy filings is obviously met here. Three other bankruptcy cases were commenced within a

six month period before the filing of the current petition, and had the effect of defeating efforts to foreclose the Hall Mortgage trust deed.

The requirement that the Court find that the petition was "part of a scheme to delay, hinder, or defraud creditors" is met here as well. "It is not common to have direct evidence of an artful plot or plan to deceive others. In general, the court must infer the existence and contents of a scheme from circumstantial evidence." *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006). Strong circumstantial evidence indicates that these four petitions were filed only for the purpose of delaying foreclosure and not for any legitimate bankruptcy purpose. "A finding that a debtor has acted with merely the intent to delay . . . is now sufficient to grant relief from the automatic stay under § 362(d)(4), assuming all other statutory requirements are met." *In re Tejal Inv., LLC*, 2012 WL 6186159, at *5 (Bankr. D. Utah 2012).

Three of the Debtor's four petitions were filed within 24 hours of a scheduled foreclosure sale under the Hall Mortgage trust deed. There is no evidence of a change in circumstances which would have justified the multiple filings. See, *In re Briggs*, 2012 WL 3780542, at *6 (Bankr. N.D. Ill. 2012). These three cases were not prosecuted in any way, the Debtor having failed even to attend the scheduled meetings under 11 U.S.C. § 341a, and were ultimately dismissed by the Court for that reason. In the case of *In re Procel*, in rem relief was granted based upon numerous bankruptcy filings by the debtor and the debtor's brother, where each of the cases was procedurally dismissed shortly after the petition date. 467 B.R. 297, 309

/ / /

/ / /

The current case was not prosecuted in good faith prior to its conversion to chapter 7. Cash collateral was not accounted for. Operating reports and court ordered status reports were not filed. It appears that the case continued under chapter 11 for the same purpose as pertained on the day that it was filed as a pro per chapter 13 case. The purpose was simply to delay a pending foreclosure on property of the Trust.

Finally, in an apparent attempt to further the scheme, the Debtor perjured herself in an amendment to the Schedules by stating that the Incline Village property was owned by her in "fee simple." Ms. Zuranich-Miller was apparently willing to lie after being advised by her new attorney that the automatic stay might not apply at all to property of the Joseph Miller Trust.

## IV. IN REM RELIEF IS NECESSARY

11 U.S.C. § 362(d)(4), uses mandatory rather than merely permissive language requiring that the Court *shall* grant in rem relief if it finds that the statutory requirements are met. Even if it were completely a matter of discretion, good cause exists to grant the requested relief.

The Debtor may point out that future bankruptcy filings would not even give rise to a new automatic stay under 11 U.S.C. § 362(c)(4)(A). As shown by the McNeff Declaration, reticent foreclosure trustees will not rely on that provision and will instead require entry of an order of the bankruptcy court before proceeding. While 11 U.S.C. §363(j) attempts to address this problem by allowing a mortgage lender to obtain a comfort order stating that the automatic stay is not in effect, those orders do little good in a case like this, where new bankruptcy petitions have been filed thick and fast. Given what has happened, including her intentional fraud and perjury on the

bankruptcy schedules, it would not even be surprising if Debora Miller-Zuranich filed another bankruptcy petition even while this current case is pending.

There is evidence that this misuse of the bankruptcy laws to thwart foreclosure was an effort coordinated by the Debtor's brother John Miller, one of the four beneficiaries of the Joseph Miller Trust. Also, it appears that Beverley Sopak, the Debtor's sister and another one of the four Trust beneficiaries, intended to affect the transfer of the Incline Village property out of the Trust in violation of the Trust Agreement, with the intent to simply to put the property "in the name of" the Sopaks. The willingness of the Millers to violate the Trust Agreement in that way, in order to vest the property in an individual rather than the Trust, is also good reason to grant in rem relief.

The Court is well aware of the many ways in which transfers of property can be used to create new stays to thwart foreclosure. The status of the Debtor, Debora Zuranich-Miller, as successor trustee of the Joseph Miller trust can be changed (or purportedly changed) with a stroke of the pen. The entry of an in rem order is the only way to ensure against more abuses orchestrated by John Miller, Beverley Sopak and Debora Miller-Zuranich.

## V. <u>GRANTING RELIEF WILL HAVE NO IMPACT ON CREDITORS</u>

The newly appointed chapter 7 trustee should have no objection to this Motion. Granting relief from the automatic stay and completion of the foreclosure will have no effect on the bankruptcy estate nor on any possible future distribution to creditors. The Debtor has no power to revoke or amend the Joseph Miller Trust. The Trust Agreement forbids any distribution of the Incline Village property from the Trust until 2027. The bankruptcy Trustee would have no authority or control over the trust

property, and could not compel a sale, much less a distribution of funds contrary to the Trust Agreement. Other property, specifically 9369 Newington Way, Elk Grove, CA, which is owned directly by the Debtor, can be liquidated to pay unsecured claims.

VI. CONCLUSION

This is an extremely clear case of the abuse which Congress addressed by amending the Bankruptcy Code to provide for in rem relief. Granting this Motion does not divest the Miller family of its inherited property. It would simply end the game playing and require the group of Miller siblings, finally, to protect their inheritance by reinstating or repaying the debt to Hall Mortgage, now well over two years delinquent.

DATE: November 4, 2019 KIRBY & McGUINN, A P.C.

By: /s/ Dean T. Kirby, Jr.
Dean T. Kirby, Jr.
Attorneys for Creditor
Hall Mortgage Fund, LP