***2 PAGES (39 PAGES TOTAL WITH ATTACHED EXHIBITS)***
Dean T. Kirby, Jr.    090114
Roberta S. Robinson 099035
KIRBY & McGUINN, A P.C.
707 Broadway, Suite 1750
San Diego, California 92101-5393
Telephone: (619) 685-4000
Facsimile:  (619) 685-4004

Attorneys for Creditor
Hall Mortgage Fund, LP

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No.      19-21640 |
| DEBORA LEIGH<br>MILLER - ZURANICH | Chapter 7 |
| | DCN:  DTK-2 |
|               Debtor. | REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY<br>(11 U.S.C. § 362(d)(4)(B)) |
| | DATE:      December 3, 2019 |
| | TIME:       9:30 a.m. |
| | DEPARTMENT B<br>COURTROOM 32<br>501 I Street, Sixth Floor<br>Sacramento, California |

/ / /

/ / /

1

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR
IN REM RELIEF FROM AUTOMATIC STAY

Creditor, Hall Mortgage Fund, LP, hereby requests this Court to take judicial notice of the following documents in support of the Motion for In Rem Relief from Automatic Stay, filed concurrently herewith. Copies of referenced documents are attached hereto.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 2 | Deed of Trust, recorded as Doc. #4751274 with the Washoe County Recorder, State of Nevada on 10/4/2017 |
| 4 | Certificate of Death of Joseph John Miller, issued September 21, 2012 |
| 6 | Grant, Bargain, and Sale Deed, recorded as Doc. #4048394 with the Washoe County Recorder, State of Nevada on 10/7/2011 |
| 7 | US Bankruptcy Court, Northern District of CA, *In re Deborah Miller Zuranich*, Docket of Bankruptcy Petition #: 18-31023 |
| 8 | US Bankruptcy Court, Northern District of CA, *In re Deborah Miller Zuranich*, Docket of Bankruptcy Petition #: 18-31252 |
| 9 | US Bankruptcy Court, Northern District of CA, *In re Deborah Miller Zuranich*, Docket of Bankruptcy Petition #: 19-30034 |

DATE:          November 4, 2019          KIRBY & McGUINN, A P.C.


By:   /s/ Dean T. Kirby, Jr.
Dean T. Kirby, Jr.
Attorneys for Creditor
Hall Mortgage Fund, LP

2

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR
IN REM RELIEF FROM AUTOMATIC STAY

APN # 122-090-29

Recording Requested By:
First Centennial Title Company
1450 Ridgeview Dr. #100
Reno, NV 89509

When Recorded Return to:
Hall Mortgage Fund, IP
6200 E. Canyon Rim Road, Suite 201
Anaheim, CA 92807

# DOC #4751274
10/04/2017 04:13:59 PM
Electronic Recording Requested By
FIRST CENTENNIAL – RENO (MAIN OF
Washoe County Recorder
Lawrence R. Burtness
Fee: $38.00 RPTT: $0
Page 1 of 20

SPACE ABOVE FOR RECORDERS USE

## Deed of Trust

(Title of Document)

**Please complete Affirmation Statement below:**

☑ I, the undersigned, hereby affirm that the attached document, including any exhibits, hereby submitted for recording does not contain the social security number of any person or persons. (Per NRS 239B.030)

**THIS DOCUMENT IS BEING RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION BY ADDING THE COMPLETE LEGAL DESCRIPTION FOR PARCEL 2**

☐ I, the undersigned, hereby affirm that the attached document, including any exhibits, hereby submitted for recording does contain the social security number of a person or persons as required by law:   (state specific law).

_____
SIGNATURE

_____
Lisa Quilici
Print Signature

_____Title Officer_____
TITLE

This page added to provide additional information required by NRS 111.312 Sections 1-2 and NRS 239B.030 Section 4.

**This cover page must be typed or printed in black ink.**

(Additional recording fee applies)

SPACE BELOW FOR RECORDER _____

Exhibit 2 Page 1 of 20

DOC # 4666203
12/29/2016 11:34:03 AM
Requested By
HALL MORTGAGE FUND LP
Washoe County Recorder
Lawrence R. Burtness - Recorder
Fee: $34.00 RPTT: $0.00
Page 1 of 18



Assessor's Parcel Number: 122-090-29

Recording Requested By:
HALL MORTGAGE FUND, LP

And When Recorded Return To:
HALL MORTGAGE FUND, LP C/O TELLONE FINANCIAL SERVICES, INC.
6200 E. CANYON RIM ROAD, SUITE 201
ANAHEIM, CALIFORNIA 92807
Loan Number: 1853-16

Mail Tax Statements To:
DEBORA L. MILLER
30 MERLIN COURT
OAKLAND, CALIFORNIA 94605

Mortgage Broker's Name: BANYON CONSULTING
GROUP, INC.
NV License #: BRE#01898703

———————————[Space Above This Line For Recording Data]———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated   NOVEMBER 28, 2016   , together with all Riders to this document.
**(B)** **"Borrower"** is   DEBORA L. MILLER, SUCCESSOR TRUSTEE OF THE JOSEPH J. MILLER LIVING TRUST, DATED 10/08/2007

---

**NEVADA**--Single Family
Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Form 3029  1/01               Page 1 of 15

*DocMagic* *eForms*
*www.docmagic.com*

Borrower is the trustor under this Security Instrument.
**(C)  "Lender"** is  HALL MORTGAGE FUND, LP

Lender is a CALIFORNIA LIMITED PARTNERSHIP                                    organized
and existing under the laws of  CALIFORNIA
Lender's address is  6200 E. CANYON RIM ROAD, SUITE 201, ANAHEIM,
CALIFORNIA 92807
Lender is the beneficiary under this Security Instrument.
**(D)  "Trustee"** is  OLD REPUBLIC TITLE CO.
, LAS VEGAS, NEVADA 89117

**(E)  "Note"** means the promissory note signed by Borrower and dated  NOVEMBER 28, 2016
The Note states that Borrower owes Lender  SEVEN HUNDRED THOUSAND AND 00/100
                                                    Dollars (U.S. $ 700,000.00          )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than DECEMBER 1, 2021  .
**(F)  "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
**(H)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders
are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☒ Second Home Rider | |
| ☐ Condominium Rider | ☐ Other(s) [specify] | |

**(I)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.
**(J)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.
**(K)  "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions,
transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)  "Escrow Items"** means those items that are described in Section 3.
**(M)  "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to,
or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

---

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                              Page 2 of 15

DocMagic *eForms*
www.docmagic.com

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | WASHOE | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 122-090-29

which currently has the address of              549 LAKESHORE BLVD., #29
                                                          [Street]

INCLINE VILLAGE        , Nevada          89451              ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                          Page 3 of 15

*DocMagic eForms*
*www.docmagic.com*

Nv3029.dot.xml

Exhibit 2 Page 4 of 20

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                    Page 4 of 15

*DocMagic eFormes*
*www.docmagic.com*

Exhibit 2 Page 5 of 20

by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01        Page 5 of 15

*DocMagic eForms*
*www.docmagic.com*

Exhibit 2 Page 6 of 20

lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01      Page 6 of 15

*DocMagic* ℰ𝐹𝑜𝑟𝑚𝑠
*www.docmagic.com*

Nv3029.dot.xml

**Exhibit 2 Page 7 of 20**

lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security

---

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01             Page 7 of 15

*DocMagic eForms*
*www.docmagic.com*

**Exhibit 2 Page 8 of 20**

Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                    Page 8 of 15

*DocMagic eForms*
*www.docmagic.com*

Nv3029.det.tmi

Exhibit 2 Page 9 of 20

takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b)  **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                        Page 9 of 15

*DocMagic* *eForms*
www.docmagic.com

Nv3029.dot.xml

Exhibit 2 Page 10 of 20

Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been

---

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029 1/01         Page 10 of 15

*DocMagic eForms*
*www.docmagic.com*

given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this

---

Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                                    Page 12 of 15

DocMagic *eForms*
www.docmagic.com

Exhibit 2 Page 13 of 20

Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

---

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                    Page 13 of 15

*DocMagic eForms*
*www.docmagic.com*

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ one percent (1%) of the unpaid principal balance, but not less than $400 or more than $900.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Debora L Miller Successor Trustee of the Joseph J. Miller Living Trust_

_____ (Seal)          _____ (Seal)
DEBORA L. MILLER        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

Witness:                                  Witness:

_____                 _____

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029  1/01                    Page 14 of 15

*DocMagic eForms*
*www.docmagic.com*

Nv3029.dot.xml

Exhibit 2 Page 15 of 20

———————————— [Space Below This Line For Acknowledgment] ————————————

State of  NEVADA

County of  ~~WASHOE~~  Alameda

This instrument was acknowledged before me on  12-8-2016
                                                        (date)

by  DEBORA L. MILLER


—————————————————————————————————————————

—————————————————————————————————————————

                        (name(s) of person(s))


[Notary seal: MILTON L. HOWTON / COMM. # 2011680 / NOTARY PUBLIC-CALIFORNIA / ALAMEDA COUNTY / My Comm. Exp. Apr. 9, 2017]

                    Signature of notarial officer

                    Notary Public
                    Title and Rank

    (Seal, if any)         My commission expires.  4-09-2017


Loan Originator: VINCE FERRAGAMO, NMLSR ID 353562
Loan Originator Organization: TELLONE FINANCIAL SERVICES, INC., NMLSR ID 353562

NEVADA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                DocMagic *eForms*
Form 3029  1/01                    Page 15 of 15         www.docmagic.com

## EXHIBIT "A"
## Legal Description

All that certain real property situate in the City of **Incline Village**, County of **Washoe**, State of **NEVADA**, described as follows:

PARCEL 1:

An undivided one-thirty-second (1/32nd) interest, as tenants in common, in a portion of Lot III of Section 17, Township 16 North, Range 18 East, M.D.B.&M., described as follows:

Commencing at the quarter section corner on the East side of said Section 17; thence South along the Eastern line of said Section 17, a distance of 1072.5 feet to the meander corner of Lake Tahoe; thence along said meander line the four following courses and distances: North 88° West 138.6 feet; South 63° West 369.6 feet; South 78° West 488.4 feet and North 72° West 473.30 feet to the Southwest corner of the parcel conveyed to E.L. King, et al., by Deed recorded in Book 153, Page 182, Deed Records; thence along the West line of said King Parcel, North 489.66 feet, more or less, to the Southern right-of-way line of Nevada State Highway 28 as it now exists; thence South 84°48' West along the last mentioned line, 200.83 feet to the point of beginning; thence South 84°48' West along said Southern line of Nevada State Highway 28, a distance of 500.00 feet; thence South 300 feet, more or less, to Lake Tahoe; thence Easterly along Lake Tahoe to a line drawn South from the true point of beginning; thence North 410 feet, more or less, to the true point of beginning.

EXCLUDING, however, from said real property the air space and all structures and improvements located therein, over and above Parcels 1 through 32, as shown on that certain Licensed Survey filed on June 28, 1964, as File No. 2477, in the Official Records of Washoe County, State of Nevada.

PARCEL 2:

The fee title in and to the air space and all structures and improvements located therein, over and above Parcel 29 as designated on said Licensed Survey, and as more particularly described as follows:

A portion of Lot III of Section 17, Township 16 North, Range 18 East, M.D.B.&M., described as follows:

224896-SLP

Exhibit 2 Page 17 of 20

Exhibit "A"
Legal Description Continued:


Commencing at the quarter section corner on the East side of said Section 17; thence South
along the Eastern line of said Section 17, a distance of 1072.5 feet to the meander corner of
Lake Tahoe; thence along said meander line the four following courses and distances:  North
88° West 139.6 feet; South 63° West 369.6 feet; South 78° West 488.4 feet and North 72° West
473.30 feet to the Southwest corner of the parcel conveyed to E.L. KING, et al., by Deed
recorded in Book 153, Page 182, Deed Records; thence along the West line of said King Parcel,
North 489.66 feet, more or less, to the Southern right of way line of Nevada State Highway 28
as it now exists; thence South 84°48' West along the last mentioned line 209.89 feet; thence
South 136.71 feet; thence North 65°99'27" West 16.83 feet to the true point of beginning of
this description; thence North 65°59'27" East 30.00 feet; thence South 24°00'33" West 65.00
feet; thence South 65°53'2" East 30 feet; thence North 24°00'33" East 65.00 to the true point
of beginning of this description, this parcel also known as Unit No. 9, Crystal Shores East.

<u>PARCEL 3:</u>

An easement to encroach into the area and estate herein above excluded for such improvements
and living areas as are or may be constructed within the air space herein conveyed.

This legal was taken from prior Document No. 3811143.

APN:  **122-090-29**


~~End of Report~~

Exhibit 2 Page 18 of 20

Loan Number: 1853-16

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 28th day of  NOVEMBER, 2016
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to HALL MORTGAGE
FUND, LP, A LIMITED PARTNERSHIP
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

549 LAKESHORE BLVD., #29, INCLINE VILLAGE, NEVADA 89451

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.**  Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan.  Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second  home.

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01
NV3890.RID  09/26/16         Page 1 of 2

*DocMagic eForms*
*www.docmagic.com*

Nv3890.rid.xml

**Exhibit 2 Page 19 of 20**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_Debora L Miller Successor Trustee of the Joseph J. Miller Living Trust_

DEBORA L. MILLER _____ (Seal)    _____ (Seal)
                     -Borrower                               -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                               -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                               -Borrower

---

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01
NV3890.RID  09/26/16                Page 2 of 2

DocMagic *eForms*
www.docmagic.com

Nv3890.rid.xml

Exhibit 2 Page 20 of 20

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# CITY AND COUNTY OF
# SAN FRANCISCO

**CERTIFICATE OF DEATH**

STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 3/06)

3052012167074 — STATE FILE NUMBER

3201238004061 — LOCAL REGISTRATION NUMBER

## DECEDENT'S PERSONAL DATA

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| JOSEPH | JOHN | MILLER |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 05/19/1940 | 72 | | | M |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP at Time of Death | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| IN | 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 | YES [X] NO | DIVORCED | 09/07/2012 | 1000 |

| 13. EDUCATION – Highest Level/Degree (see worksheet on back) | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? (if yes, see worksheet on back) | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| BACHELOR | [X] NO | CAUCASIAN |

| 17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| REALTOR | REAL ESTATE | 45 |

## USUAL RESIDENCE

20. DECEDENT'S RESIDENCE (Street and number, or location)
30 MERLIN COURT

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| OAKLAND | ALAMEDA | 94605 | 54 | CA |

## INFORMANT

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) |
|---|---|
| DEBORA MILLER, DAUGHTER | 9369 NEWINGTON WAY, ELK GROVE, CA 95758 |

## SPOUSE/SRDP AND PARENT INFORMATION

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| | | |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| LOUIS | JENNINGS | MILLER | IN |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| PHERNE | JACQUELINE | DAVIES | OH |

## FUNERAL DIRECTOR / LOCAL REGISTRAR

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 09/20/2012 | MOUNTAIN VIEW CEMETERY 5000 PIEDMONT AVENUE, OAKLAND, CA 94611 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| BU | ► DOUGLAS PAUL COLEY | EMB8146 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| HULL'S WALNUT CREEK CHAPEL | FD250 | ► TOMAS ARAGON, MD, DR.P.H. | 09/14/2012 |

## PLACE OF DEATH

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| UCSF MEDICAL CENTER | [X] IP / ER/OP / DOA | Hospice / Nursing Home/LTC / Decedent's Home / Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, and location) | 106. CITY |
|---|---|---|
| SAN FRANCISCO | 505 PARNASSUS AVENUE | SAN FRANCISCO |

## CAUSE OF DEATH

107. CAUSE OF DEATH — Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

IMMEDIATE CAUSE (Final disease or condition resulting in death)

| | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| (A) | RESPIRATORY DISTRESS | (AT) MOS | YES [X] NO — REFERRAL NUMBER |
| (B) | METASTATIC TO LIVER AND LUNGS | (BT) MOS | 109. BIOPSY PERFORMED? YES [X] NO |
| (C) | COLORECTAL ADENOCARCINOMA | (CT) MOS | 110. AUTOPSY PERFORMED? YES [X] NO |
| (D) | | (DT) MOS | 111. USED IN DETERMINING CAUSE? YES [ ] NO |

Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| NONE |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | YES / NO / UNK |

## PHYSICIAN'S CERTIFICATION

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.

| (A) Decedent Attended Since mm/dd/ccyy | (B) Decedent Last Seen Alive mm/dd/ccyy | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|---|
| 09/04/2012 | 09/07/2012 | ► CYNTHIA LYNN FENTON M.D. | G71207 | 09/12/2012 |

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE
CYNTHIA LYNN FENTON M.D.
505 PARNASSUS AVENUE, SAN FRANCISCO, CA 94143

## CORONER'S USE ONLY

119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.

| MANNER OF DEATH | Natural / Accident / Homicide / Suicide / Pending Investigation / Could not be determined | 120. INJURED AT WORK? YES / NO / UNK | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|---|

123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.)

124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury)

125. LOCATION OF INJURY (Street and number, or location, and city, and zip)

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ► | | |

## STATE REGISTRAR

| A | B | C | D | E | | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | *010001002153005* | | |

STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

This is to certify that the image reproduced hereupon is a true copy of the record on file in the SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH as of the date issued.

DATE ISSUED    SEP 2 1 2012    *003278296*

*Tomás Aragón*
Tomás Aragón, M.D., Dr.P.H.
Health Officer and Local Registrar

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the City and County Health Officer.

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

Exhibit 4 Page 1 of 1

**APN:** 122-090-29
**R.P.T.T.:** $0.00
Exempt: (7)

**Recording Requested By:**
Joseph John Miller
30 Merlin Court
Oakland, CA 94605

**After Recording Mail To:**
Elvira J. Orly, Esq.
The Orly Law Firm, Inc.
115 Sansome St. Ste 1005
San Francisco CA 94104

**Send Subsequent Tax Bills To:**
Joseph J. Miller, Trustee
136 Oak Road
Orinda CA 94563

**DOC # 4048394**
10/07/2011 12:53:15 PM
Requested By
ORLY LAW FIRM INC
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee: $17.00 RPTT: $0.00
Page 1 of 4

# GRANT, BARGAIN, AND SALE DEED

TITLE OF DOCUMENT

THIS INDENTURE WITNESSETH THAT, **Joseph John Miller, also known as Joseph J. Miller, an unmarried man, who acquired title as a married man,** FOR GOOD AND VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, does hereby GRANT, BARGAIN, SELL, AND CONVEY, to **Joseph J. Miller, sole Trustee or his successors in trust, under The Joseph J. Miller Living Trust, dated** 10/08/2007_____ **and any amendments thereto,** whose address is 30 Merlin Court, Oakland, California 94605,

ALL that real property situated in the County of **Washoe**, State of **Nevada**, bounded and described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.

Per NRS 111.312 – The Legal Description appeared previously in **Grant, Bargain, Sale Deed**, recorded on **September 7, 1978**, as Document No. **556141**, in Washoe County Records, Washoe County, Nevada.

MORE commonly known as: **549 Lakeshore Boulevard, Unit 29
Incline Village, Nevada 89451**

Subject To: Restrictions, Conditions, Covenants, Rights, Rights of Way, and Easements now of record, if any.

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Exhibit 6 Page 1 of 4

WITNESS my/our hands, this _7_ day of _January_ , 20_11_ .


_Joseph John Miller_
Joseph John Miller
a/k/a Joseph J. Miller

**STATE OF** _California_ )
                              ) ss
**COUNTY OF** _San Francisco_ )

This instrument was acknowledged before me, this _7th_ day of _January_ ,
20_11_ , by **Joseph John Miller a/k/a Joseph J. Miller.**

                                             **NOTARY STAMP/SEAL**

_Elva J. Orly_
Notary Public

_____
Title and Rank
My Commission Expires: _January 20, 2013_

ELVIRA J. ORLY
COMM. #1832303
NOTARY PUBLIC ● CALIFORNIA
CONTRA COSTA COUNTY
Comm. Exp. JAN. 20, 2013


I, **Joseph John Miller**, hereby affirm that this document submitted for recording does not
contain a social security number.

_Joseph John Miller_          Grantor _____
Signature                     Title _____

Joseph John Miller
Printed Name

Exhibit 6 Page 2 of 4

ALL THAT REAL PROPERTY SITUATE IN THE COUNTY OF WASHOE, STATE OF NEVADA, DESCRIBED AS FOLLOWS:

## PARCEL 1:

AN UNDIVIDED **1/32ND** INTEREST, AS TENANT IN COMMON, IN A PORTION OF LOT 111 OF SECTION 17, TOWNSHIP 16 NORTH, RANGE 18 EAST, M.D.B.&M., DESCRIBED AS FOLLOWS:

COMMENCING AT THE QUARTER SECTION CORNER ON THE EAST SIDE OF SAID SECTION 17; THENCE SOUTH ALONG THE EASTERN LINE OF SAID SECTION 17, A DISTANCE OF 1072.5 FEET TO THE MEANDER CORNER OF LAKE TAHOE; THENCE ALONG SAID MEANDER LINE THE FOUR FOLLOWING COURSES AND DISTANCES: NORTH 88° WEST 138.6 FEET; SOUTH 63° WEST 369.6 FEET; SOUTH 78° WEST 488.4 FEET AND NORTH 72° WEST 473.30 FEET TO THE SOUTHWEST CORNER OF THE PARCEL CONVEYED TO E. L. KING ET AL, BY DEED RECORDED IN BOOK 153, PAGE 182, DEED RECORDS; THENCE ALONG THE WEST LINE OF SAID KING PARCEL, NORTH 489.66 FEET, MORE OR LESS, TO THE SOUTHERN RIGHT OF WAY LINE OF NEVADA STATE HIGHWAY 28 AS IT NOW EXISTS; THENCE SOUTH 84° 48' WEST ALONG THE LAST MENTIONED LINE, 200.83 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 84° 48' WEST ALONG SAID SOUTHERN LINE OF NEVADA STATE HIGHWAY 28, A DISTANCE OF 500.00 FEET; THENCE SOUTH 300 FEET, MORE OR LESS, TO LAKE TAHOE; THENCE EASTERLY ALONG LAKE TAHOE TO A LINE DRAWN SOUTH FROM THE TRUE POINT OF BEGINNING; THENCE NORTH 410 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

EXCLUDING, HOWEVER, FROM SAID REAL PROPERTY THE AIR SPACE AND ALL STRUCTURES AND IMPROVEMENTS LOCATED THEREIN OVER AND ABOVE **PARCELS 1** THROUGH **32** AS SHOWN ON THAT CERTAIN LICENSED SURVEY FILED ON THE 7TH DAY OF MAY, 1963 AS FILE NO. 383872, WASHOE COUNTY, NEVADA, RECORDS,

## PARCEL 2:

THE AIR SPACE OVER AND ABOVE PARCEL 29 AS DESIGNATED ON SAID LICENSED SURVEY, AND AS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

A PORTION OF LOT 111 OF SECTION 17, TOWNSHIP 16 NORTH, RANGE 18 EAST, M.D.B. &M., DESCRIBED AS FOLLOWS:

COMMENCING AT THE QUARTER SECTION CORNER ON THE EAST SIDE OF SAID SECTION 17; THENCE SOUTH ALONG THE EASTERN LINE OF SAID SECTION 17, A DISTANCE OF 1072.5 FEET TO THE MEANDER CORNER OF LAKE TAHOE; THENCE ALONG SAID MEANDER LINE THE FOUR FOLLOWING COURSES AND DISTANCES: NORTH 88° WEST 138.6 FEET; SOUTH 63° WEST 369.6 FEET; SOUTH 78° WEST 488.4 FEET AND NORTH 72° WEST 473.30 FEET TO THE SOUTHWEST CORNER OF THE PARCEL CONVEYED TO E. L. KING, ET AL, BY DEED RECORDED IN BOOK 153, PAGE 182, DEED RECORDS; THENCE

Exhibit 6 Page 3 of 4

## EXHIBIT "A"
## LEGAL DESCRIPTION (Continued)

ALONG THE WEST LINE OF SAID KING PARCEL, NORTH 489.66 FEET, MORE OR LESS, TO THE SOUTHERN RIGHT OF WAY LINE OF NEVADA STATE HIGHWAY 28, AS IT NOW EXISTS; THENCE SOUTH 84° 48' WEST ALONG THE LAST MENTIONED LINE, 700.83 FEET; THENCE SOUTH 50.89 FEET; THENCE NORTH 83° 54' 20" EAST 89.63 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 83° 54' 20" EAST 25.00 FEET; THENCE SOUTH 6° 05' 40" EAST 65.00 FEET; THENCE SOUTH 83° 54' 20" WEST 25.00 FEET; THENCE NORTH 6° 05' 40" WEST 65.00 FEET TO THE TRUE POINT OF BEGINNING.

### PARCEL 3:

AN EASEMENT TO ENCROACH INTO THE AREA AND ESTATE HEREINABOVE EXCLUDED FROM **PARCEL 1** FOR SUCH IMPROVEMENTS AND LIVING AREAS AS ARE OR MAY BE CONSTRICTED WITHIN THE AIR SPACE DESCRIBED IN **PARCEL 2**.

Exhibit 6 Page 4 of 4

# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Francisco)
### Bankruptcy Petition #: 18-31023

|  |  |
|---|---|
| *Assigned to:* Judge Hannah L. Blumenstiel | *Date filed:* 09/18/2018 |
| Chapter 13 | *Date terminated:* 01/16/2019 |
| Voluntary | *Debtor dismissed:* 11/08/2018 |
| Asset | *341 meeting:* 11/15/2018 |

*Debtor disposition:* Dismissed for Failure to File Information

**Debtor**
**Deborah Miller Zuranich**
3053 Fillmore St #245
San Francisco, CA 94123
SAN FRANCISCO-CA
SSN / ITIN: xxx-xx-6813
Tax ID / EIN: 46-6330088
*aka* Deborah Leigh Miller
*dba* Joseph J. Miller Living Trust dated October 8, 2007

represented by **Deborah Miller Zuranich**
PRO SE

**Trustee**
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

**U.S. Trustee**
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 09/18/2018 | [1](#)<br>(8 pgs) | Chapter 13 Voluntary Petition Individual, Fee Amount $0.00. Filed by Deborah Miller Zuranich . Incomplete Filings due by 10/2/2018. Order Meeting of Creditors due by 10/18/2018. Chapter 13 Plan due by 10/2/2018. (lj) Modified on 9/18/2018 (lj). (Entered: 09/18/2018) |
| 09/18/2018 | [2](#) | Statement of Social Security Number. Filed by Debtor Deborah Miller Zuranich (lj) (Entered: 09/18/2018) |

**Exhibit 7 Page 1 of 5**

| 09/18/2018 | 3<br>(2 pgs) | Creditor Matrix Filed by Debtor Deborah Miller Zuranich (lj) (Entered: 09/18/2018) |
|---|---|---|
| 09/18/2018 | 4<br>(1 pg) | Application to Pay Filing Fee in Installments Filed by Debtor Deborah Miller Zuranich (lj) (Entered: 09/18/2018) |
| 09/19/2018 | | Notice of Debtor's Prior Filings for debtor Deborah Miller Zuranich Case Number 17-31036, Chapter 13 filed in California Northern Bankruptcy Court on 10/16/2017 , Dismissed for Other Reason on 11/03/2017.(Admin) (Entered: 09/19/2018) |
| 09/19/2018 | 5<br>(3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 10/18/2018 at 01:00 PM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 12/17/2018 Proofs of Claims due by 11/27/2018 Last day to object to confirmation is 10/18/2018 **Confirmation Hearing scheduled for 11/21/2018 at 11:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (rg)) (Entered: 09/19/2018) |
| 09/19/2018 | 6<br>(3 pgs; 2 docs) | Order to File Required Documents and Notice of Automatic Dismissal. (kl) (Entered: 09/19/2018) |
| 09/19/2018 | 7<br>(1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) (Entered: 09/19/2018) |
| 09/19/2018 | 8<br>(3 pgs; 2 docs) | Order Re: Chapter 13 Plan Payments and Adequate Protection Payments (admin) (Entered: 09/19/2018) |
| 09/21/2018 | 9<br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 5 Meeting of Creditors Chapter 13). Notice Date 09/21/2018. (Admin.) (Entered: 09/20/2018) |
| 09/21/2018 | 10<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) 6 Order to File Missing Documents). Notice Date 09/21/2018. (Admin.) (Entered: 09/20/2018) |
| 09/21/2018 | 11<br>(2 pgs; 2 docs) | Order and Notice Regarding Failure to Pay Filing Fee (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Deborah Miller Zuranich). Non-Compliance (Payments) due by 10/5/2018. (kl) (Entered: 09/21/2018) |
| 09/22/2018 | 12<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) 8 Order Re Ch 13 Plan and Adequate Protection Payments). Notice Date 09/22/2018. (Admin.) (Entered: 09/22/2018) |
| 09/23/2018 | 13<br>(2 pgs) | BNC Certificate of Mailing - Fail to Pay Filing Fees. (RE: related document(s) 11 Order to Pay Filing Fee). Notice Date 09/23/2018. (Admin.) (Entered: 09/23/2018) |
| 10/01/2018 | | Receipt of Filing Fee for Chapter 13 Voluntary Petition. Amount 210.00 from Deborah Miller Zuranich. Receipt Number |

**Exhibit 7 Page 2 of 5**

Filed 11/04/19                          Case 18-31040                                    Doc 175

| | | 30064949. (admin) (Entered: 10/01/2018) |
|---|---|---|
| 10/02/2018 | 14<br>(1 pg) | Motion for Extension of Time to File Required Documents Filed by Debtor Deborah Miller Zuranich (ka) (Entered: 10/02/2018) |
| 10/02/2018 | | Receipt of Filing Fee for Chapter 13 Voluntary Petition. Amount 100.00 from Deborah Miller Zuranich. Receipt Number 30064952. (admin) (Entered: 10/02/2018) |
| 10/03/2018 | 15<br>(4 pgs; 2 docs) | Order Granting Motion For Extension Of Time To File Required Documents (Related Doc # 14) Incomplete Filings due by 10/16/2018 for 1, (rdr) (Entered: 10/03/2018) |
| 10/05/2018 | 16<br>(4 pgs) | BNC Certificate of Mailing (RE: related document(s) 15 Order on Motion to Extend Time). Notice Date 10/05/2018. (Admin.) (Entered: 10/05/2018) |
| 10/16/2018 | 17<br>(2 pgs) | Motion for Extension of Time to File Required Documents Fed. Rule Bankruptcy Procedure 1007(c) and Motion to Continue 341 Mtg (RE: related document(s)5 Meeting of Creditors Chapter 13) . Filed by Debtor Deborah Miller Zuranich (myt) (Entered: 10/16/2018) |
| 10/17/2018 | 18<br>(4 pgs; 2 docs) | Order Granting Motion For Extension of Time to File Required Documents and Denying Motion to Continue Section 341 Meeting (Related Doc # 17) Incomplete Filings due by 11/1/2018 for 1, (rdr) (Entered: 10/17/2018) |
| 10/18/2018 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued. Next Meeting of Creditors to be Held on 11/15/2018 at 02:00 PM at Office of the U.S. Trustee Office 450 Debtor absent. (Burchard, David) (Entered: 10/18/2018) |
| 10/18/2018 | | Case is transferred to the Chapter 13 Pending List pursuant to the Chapter 13 Calendar Procedures posted on the Court's Website and Chapter 13 Trustee's Website. Confirmation Hearing off calendar . (Burchard, David (rg)) (Entered: 10/18/2018) |
| 10/19/2018 | 19<br>(4 pgs) | BNC Certificate of Mailing (RE: related document(s) 18 Order on Motion to Extend Time). Notice Date 10/19/2018. (Admin.) (Entered: 10/19/2018) |
| 11/08/2018 | 20<br>(2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)18 Order Granting Motion For Extension of Time to File Required Documents and Denying Motion to Continue Section 341 Meeting). Case Management Action due after 12/24/2018. (ka) (Entered: 11/08/2018) |
| 11/10/2018 | 21<br>(2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) 20 Order and |

**Exhibit 7 Page 3 of 5**

| | | |
|---|---|---|
| | | Notice of Dismissal for Failure to Comply). Notice Date 11/10/2018. (Admin.) (Entered: 11/10/2018) |
| 11/16/2018 | 22 (3 pgs) | Motion to Vacate Dismissal (RE: related document(s)20 Order and Notice of Dismissal for Failure to Comply) Filed by Debtor Deborah Miller Zuranich. (With Certificate of Service) (ka) (Entered: 11/16/2018) |
| 12/13/2018 | 23 (3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 01/14/2019 (Burchard, David (lh)) (Entered: 12/13/2018) |
| 12/16/2018 | 24 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 23 Trustee's Chapter 12/13 Final Report and Notice). Notice Date 12/16/2018. (Admin.) (Entered: 12/16/2018) |
| 01/16/2019 | 25 (3 pgs; 2 docs) | Order Denying Motion To Vacate Dismissal (Related Doc # 22) (bg) (Entered: 01/16/2019) |
| 01/16/2019 | 26 (2 pgs; 2 docs) | Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree (RE: related document(s)23 Trustee's Chapter 12/13 Final Report and Notice). (pw) (Entered: 01/16/2019) |
| 01/16/2019 | | Bankruptcy Case Closed. (pw) (Entered: 01/16/2019) |
| 01/18/2019 | 27 (2 pgs) | BNC Certificate of Mailing (RE: related document(s) 26 Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 01/18/2019. (Admin.) (Entered: 01/18/2019) |
| 01/18/2019 | 28 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 25 Order on Motion to Vacate). Notice Date 01/18/2019. (Admin.) (Entered: 01/18/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/04/2019 15:36:50 | | |
| **PACER Login:** | Kirbymac01:2561536:0 | **Client Code:** | TFS010-1 |
| **Description:** | Docket Report | **Search Criteria:** | 18-31023 Fil or Ent: filed From: 9/5/2017 To: 11/4/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html |

**Exhibit 7 Page 4 of 5**

11/4/2019    CANB Live Database

| | | | Page counts for documents: included |
|---|---|---|---|
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**Exhibit 7 Page 5 of 5**

# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Francisco)
### Bankruptcy Petition #: 18-31252

*Date filed:* 11/20/2018
*Date terminated:* 02/13/2019
*Debtor dismissed:* 12/21/2018
*341 meeting:* 01/10/2019

*Assigned to:* Judge Hannah L. Blumenstiel
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for failure to pay filing fee

*Debtor*
**Deborah Miller Zuranich**
3053 Fillmore St #245
San Francisco, CA 94123
SAN FRANCISCO-CA
SSN / ITIN: xxx-xx-6813
Tax ID / EIN: 46-6330088
*aka* **Deborah Leigh Miller**
*dba* **Joseph J. Miller Living Trust dated October 8, 2007**

represented by **Deborah Miller Zuranich**
PRO SE

*Trustee*
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

*U.S. Trustee*
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 11/20/2018 | [1](#)<br>(8 pgs) | Chapter 13 Voluntary Petition Individual, Filing fee not paid. Filed by Deborah Miller Zuranich . Incomplete Filings due by 12/4/2018. Order Meeting of Creditors due by 12/20/2018. Chapter 13 Plan due by 12/4/2018. (kl) (Entered: 11/20/2018) |
| 11/20/2018 | [2](#)<br>(2 pgs) | Creditor Matrix Filed by Debtor Deborah Miller Zuranich. (kl) (Entered: 11/20/2018) |
| 11/20/2018 | [3](#) | Application to Pay Filing Fee in Installments Filed by Debtor |

| | (1 pg) | Deborah Miller Zuranich . (kl) (Entered: 11/20/2018) |
|---|---|---|
| 11/20/2018 | **4**<br>(2 pgs; 2 docs) | Order Granting Application To Pay Filing Fees In Installments. (Related Doc # 3). Second Installment Payment due by 12/20/2018. Third Installment Payment due by 1/22/2019. Final Installment Payment due by 2/19/2019. (wbk) (Entered: 11/20/2018) |
| 11/21/2018 | | Notice of Debtor's Prior Filings for debtor Deborah Miller Zuranich Case Number 18-31023, Chapter 13 filed in California Northern Bankruptcy Court on 09/18/2018; Case Number 17-31036, Chapter 13 filed in California Northern Bankruptcy Court on 10/16/2017 , Dismissed for Other Reason on 11/03/2017.(Admin) (Entered: 11/21/2018) |
| 11/21/2018 | **5**<br>(1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) DEFECTIVE ENTRY: PDF reflects incorrect debtor name. Modified on 11/21/2018 (ka). (Entered: 11/21/2018) |
| 11/21/2018 | **6**<br>(3 pgs; 2 docs) | Order Re: Chapter 13 Plan Payments and Adequate Protection Payments (admin) (Entered: 11/21/2018) |
| 11/22/2018 | **7**<br>(2 pgs) | BNC Certificate of Mailing - Order for Payment of Filing Fees in Installments . (RE: related document(s) 4 Order on Application to Pay Filing Fees in Installments). Notice Date 11/22/2018. (Admin.) (Entered: 11/22/2018) |
| 11/25/2018 | **8**<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) 6 Order Re Ch 13 Plan and Adequate Protection Payments). Notice Date 11/25/2018. (Admin.) (Entered: 11/25/2018) |
| 11/30/2018 | **9**<br>(2 pgs) | Request for Notice Filed by Creditor Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2006-AR3 (Wong, Jennifer) (Entered: 11/30/2018) |
| 12/04/2018 | **10**<br>(2 pgs) | Motion for Extension of Time to File Required Documents Fed. Rule Bankruptcy Procedure 1007(c) and Motion to Continue 341 Meeting Filed by Debtor Deborah Miller Zuranich (myt) (Entered: 12/05/2018) |
| 12/05/2018 | **11**<br>(2 pgs) | Amended Motion for Extension of Time to File Required Documents Fed. Rule Bankruptcy Procedure 1007(c) and Motion to Continue 341 Meeting (RE: related document(s)10Motion for Extension of Time) Filed by Debtor Deborah Miller Zuranich (myt). CORRECTIVE ENTRY: Clerk added linkage to document #10. Modified on 12/5/2018 (klr). (Entered: 12/05/2018) |
| 12/07/2018 | **13**<br>(4 pgs; 2 docs) | Order Granting Motion to Extend Time To File Required Documents (Related Doc # 11) Incomplete Filings due by 1/4/2019 for 1, (rdr) (Entered: 12/11/2018) |

| | 12 (3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 1/10/2019 at 01:00 PM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 3/11/2019 Proofs of Claims due by 1/29/2019 Last day to object to confirmation is 1/10/2019 **Confirmation Hearing scheduled for 2/20/2019 at 11:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (tm)) (Entered: 12/11/2018) |
|---|---|---|
| 12/11/2018 | | |
| 12/13/2018 | 14 (3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 12 Meeting of Creditors Chapter 13). Notice Date 12/13/2018. (Admin.) (Entered: 12/13/2018) |
| 12/13/2018 | 15 (4 pgs) | BNC Certificate of Mailing (RE: related document(s) 13 Order on Motion to Extend Time). Notice Date 12/13/2018. (Admin.) (Entered: 12/13/2018) |
| 12/21/2018 | 16 (2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)4 Order on Application to Pay Filing Fees in Installments). Case Management Action due after 2/4/2019. (ka) (Entered: 12/21/2018) |
| 12/21/2018 | | Receipt of Installment Filing Fee for Chapter 13 Voluntary Petition. Amount 104.00 from Deborah Miller Zuranich. Receipt Number 30065066. (admin) (Entered: 12/21/2018) |
| 12/23/2018 | 17 (2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) 16 Order and Notice of Dismissal for Failure to Comply). Notice Date 12/23/2018. (Admin.) (Entered: 12/23/2018) |
| 01/07/2019 | 18 (3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 02/6/2019 (Burchard, David (cm)) (Entered: 01/07/2019) |
| 01/10/2019 | 19 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 18 Trustee's Chapter 12/13 Final Report and Notice). Notice Date 01/10/2019. (Admin.) (Entered: 01/10/2019) |
| 02/07/2019 | 20 (2 pgs; 2 docs) | Order Discharging Chapter 13 Trustee After Dismissal and Final Decree (admin) (Entered: 02/11/2019) |
| 02/13/2019 | | Bankruptcy Case Closed. (tp) (Entered: 02/13/2019) |
| 02/14/2019 | 21 (2 pgs) | BNC Certificate of Mailing (RE: related document(s) 20 Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 02/14/2019. (Admin.) (Entered: 02/14/2019) |

**Exhibit 8 Page 3 of 4**

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/04/2019 15:37:52 | | | |
| **PACER Login:** | Kirbymac01:2561536:0 | **Client Code:** | TFS010-1 |
| **Description:** | Docket Report | **Search Criteria:** | 18-31252 Fil or Ent: filed From: 9/5/2017 To: 11/4/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**FilingFeeDue, PlnDue, DebtEd, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Francisco)
### Bankruptcy Petition #: 19-30034

*Date filed:* 01/11/2019
*Date terminated:* 03/19/2019
*Debtor dismissed:* 01/28/2019
*341 meeting:* 02/14/2019

*Assigned to:* Judge Hannah L. Blumenstiel
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Failure to File
Information

**Debtor**
**Deborah Miller Zuranich**
3053 Filmore St #245
San Francisco, CA 94123
SAN FRANCISCO-CA
SSN / ITIN: xxx-xx-6813
Tax ID / EIN: 46-6330088
*aka* **Deborah Leigh Miller**
*dba* **Joseph J. Miller Living Trust Dated 10/7/2007**

represented by **Deborah Miller Zuranich**
PRO SE

**Trustee**
**David Burchard**
P.O. Box 8059
Foster City, CA 94404
(650) 345-7801

**U.S. Trustee**
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415)705-3333

| Filing Date | # | Docket Text |
|---|---|---|
| 01/11/2019 | [1](#)<br>(10 pgs) | Chapter 13 Voluntary Petition Individual, Fee Amount $0.00. Filed by Deborah Miller Zuranich . Incomplete Filings due by 1/25/2019. Order Meeting of Creditors due by 2/11/2019. Chapter 13 Plan due by 1/25/2019. (dc) DEFECTIVE ENTRY: No selection made on Boxes 19 and 20. Modified on 1/11/2019 (wbk). (Entered: 01/11/2019) |
| 01/11/2019 | [2](#)<br>(1 pg) | Application to Pay Filing Fee in Installments. Filed by Debtor Deborah Miller Zuranich (dc) (Entered: 01/11/2019) |

**Exhibit 9 Page 1 of 3**

| 01/11/2019 | 3 | Statement of Social Security Number. Filed by Debtor Deborah Miller Zuranich (dc) (Entered: 01/11/2019) |
|---|---|---|
| 01/11/2019 | 4<br>(1 pg) | Certificate of Credit Counseling. Filed by Debtor Deborah Miller Zuranich (dc) (Entered: 01/11/2019) |
| 01/11/2019 | 5<br>(3 pgs; 2 docs) | Order to File Required Documents and Notice of Automatic Dismissal. (wbk) (Entered: 01/11/2019) |
| 01/12/2019 | 6<br>(1 pg) | Request for Notice Filed by Creditor Synchrony Bank. (Smith, Valerie) (Entered: 01/12/2019) |
| 01/12/2019 | 9<br>(3 pgs; 2 docs) | Order Re: Chapter 13 Plan Payments and Adequate Protection Payments (admin) (Entered: 01/14/2019) |
| 01/13/2019 | 7<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) 5 Order to File Missing Documents). Notice Date 01/13/2019. (Admin.) (Entered: 01/13/2019) |
| 01/14/2019 | | Notice of Debtor's Prior Filings for debtor Deborah Miller Zuranich Case Number 18-31023, Chapter 13 filed in California Northern Bankruptcy Court on 09/18/2018; Case Number 18-31252, Chapter 13 filed in California Northern Bankruptcy Court on 11/20/2018; Case Number 17-31036, Chapter 13 filed in California Northern Bankruptcy Court on 10/16/2017 , Dismissed for Other Reason on 11/03/2017.(Admin) (Entered: 01/14/2019) |
| 01/14/2019 | 8<br>(3 pgs; 2 docs) | Meeting of Creditors with Certificate of Service. 341(a) meeting to be held on 2/14/2019 at 02:00 PM Office of the U.S. Trustee Office 450 Objection to Dischargeability due by 4/15/2019 Proofs of Claims due by 3/22/2019 Last day to object to confirmation is 2/14/2019 **Confirmation Hearing scheduled for 3/20/2019 at 11:00 AM at San Francisco Courtroom 19 - Blumenstiel.** (Burchard, David (rg)) (Entered: 01/14/2019) |
| 01/14/2019 | 10<br>(3 pgs; 2 docs) | Order Denying Application To Pay Filing Fees In Installments. (Related Doc # 2). Full Filing Fee due by 1/29/2019. (bg) (Entered: 01/15/2019) |
| 01/16/2019 | 11<br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 8 Meeting of Creditors Chapter 13). Notice Date 01/16/2019. (Admin.) (Entered: 01/16/2019) |
| 01/17/2019 | 12<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) 9 Order Re Ch 13 Plan and Adequate Protection Payments). Notice Date 01/17/2019. (Admin.) (Entered: 01/17/2019) |
| 01/17/2019 | 13<br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) 10 Order on Application to Pay Filing Fees in Installments). Notice Date 01/17/2019. (Admin.) (Entered: 01/17/2019) |

**Exhibit 9 Page 2 of 3**

| 01/28/2019 | 14 (2 pgs; 2 docs) | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)5 Order to File Missing Documents). Case Management Action due after 3/14/2019. (aw) (Entered: 01/28/2019) |
| 01/30/2019 | 15 (2 pgs) | BNC Certificate of Mailing - Order and Notice of Dismissal for Failure to Comply. (RE: related document(s) 14 Order and Notice of Dismissal for Failure to Comply). Notice Date 01/30/2019. (Admin.) (Entered: 01/30/2019) |
| 02/12/2019 | 16 (3 pgs; 2 docs) | Trustee's Final Report and Account and Notice . Objections to Trustee Final Account due by 03/14/2019 (Burchard, David (lh)) (Entered: 02/12/2019) |
| 02/14/2019 | 17 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 16 Trustee's Chapter 12/13 Final Report and Notice). Notice Date 02/14/2019. (Admin.) (Entered: 02/14/2019) |
| 03/15/2019 | 18 (2 pgs; 2 docs) | Order Discharging Chapter 13 Trustee After Dismissal and Final Decree (admin) (Entered: 03/18/2019) |
| 03/19/2019 | | Bankruptcy Case Closed. (lj) (Entered: 03/19/2019) |
| 03/21/2019 | 19 (2 pgs) | BNC Certificate of Mailing (RE: related document(s) 18 Order Discharging Chapter 12/13 Trustee After Case Dismissal and Final Decree). Notice Date 03/21/2019. (Admin.) (Entered: 03/21/2019) |

**PACER Service Center**

**Transaction Receipt**

11/04/2019 15:39:25

| PACER Login: | Kirbymac01:2561536:0 | Client Code: | TFS010-1 |
| Description: | Docket Report | Search Criteria: | 19-30034 Fil or Ent: filed From: 9/5/2017 To: 11/4/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |

**Exhibit 9 Page 3 of 3**